LIBERTY MUTUAL INSURANCE CO. *v.* A. L. MAXWELL.

(*Nashville,* December Term, 1931.)

Opinion filed February 13, 1932.

Thos. O. H. Smith, Rufus M. Hickey and McGugin & Evans, for plaintiff in error.

·Raymond Denny, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Appealing from an award for compensation, the complaint is of the amount. Failure to give notice is also relied on, but the conceded knowledge of the employer, coupled with initial recognition of some liability by assumed treatment of the injury, justifies the application of the rule of waiver.

Maxwell, employed as a steam fitter, was accidentally struck on the head by a heavy hammer and totally disabled for some weeks. His skull was fractured and a trephining operation was performed on him in the hospital. He suffered partial paralysis and it is apparent that he has not recovered, although he was at one time discharged from the hospital and sent back to work. The suit was not brought until almost a year after the accident and the case was tried some months later. While he had worked intermittently, and had been kept on the payroll, the proof is that he was never fully competent, and he was finally let out by his employer about the time of the trial.

There is abundant evidence of a very serious injury and a continuing disability which promises to be permanent. While there is some divergence in the testimony as to the extent of disability, it appears that the trial Judge saw and carefully estimated for himself its extent, and he is supported in his finding of ninety per cent by the testimony of at least two physicians.

The disability, or impairment of earning capacity, rests on the loss of the use of a leg and arm, and counsel for appellant stress a distinction between loss of use of a limb or limbs, and disability. Recovery was allowed

under sub-section (C) of Section 28 of the Compensation Act, which reads as follows:

"Permanent partial disability in certain cases.—In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss."

A preceding paragraph of the same Sub-section reads, "For the loss of one arm and one leg, fifty per centum of the average weekly wages during four hundred (400) weeks." The trial Judge found as a fact "that since said accident petitioner has suffered ninety per cent partial loss of his left arm and leg." It is insisted for appellant that there is no evidence to sustain this finding; that the testimony was to the effect only that there had been an impairment in earning capacity which established only disability, but did not establish the loss of the use of the members involved. We think this a too technical construction to be given the testimony. We think it quite apparent that the witnesses had in mind and were undertaking to relate the disability, or impairment of earning capacity, to the loss of use of the arm and leg. It is true that the testimony contains no distinct allocation of the loss of use as between the arm and the leg, but we are not of opinion that this is necessary, since the language of the pertinent schedule in the Act already above quoted specifically awards compensation "for the loss of one arm and one leg," coupling the two. In other words, if the proof had shown a

total loss of both, the fifty percentum allowance for four hundred weeks would have followed; and where the proof shows that there has been, not a total but a partial permanent disability due to injury to these members, it would seem proper to fix the percentage of loss accordingly.

Of course it will be borne in mind that the finding of the trial Judge as to the extent of the injury, in this case the disability resulting from a loss of use of the arm and leg, is binding on this Court if there is any material evidence to sustain his finding. As already suggested, we think his finding of ninety per cent is supported by competent evidence.

The record is full of evidence of a very serious injury and impairment of use of petitioner's limbs. In the course of his testimony, Dr. Sanders went so far as to say, "the man's arm and leg are practically useless on that side." It is plausibly insisted for petitioner that this testimony would sustain a finding by the trial Judge of a ninety per cent impairment, when it appears that the injured employee has been personally examined by the Judge. A lay witness, who knew petitioner and worked with him, testified that he was "unable to do anything in the way of lifting, climbing or things like that," also that he is unable to do any of the things which he had been accustomed to do. Dr. Bunch testified, "If I had to hire him he would be one hundred percent disabled," and his testimony clearly shows that he related this disability to the paralysis in his left arm and leg. One of the physicians thought that his left arm was impaired to a greater degree than his left leg, while another was of opinion that his left leg was more impaired than his left arm. Considering the two limbs together, their capacity

to function, Dr. Sanders expressed the opinion that his disability amounted to ninety percent, and we think it quite obvious that he was referring to disability resulting from loss of use of the limbs. Enough has been said to make it clear that there is material evidence in the record to sustain the finding of the trial Judge.

The award was for three hundred and sixty (360) weeks at $16 a week, the proof showing that his average weekly earnings were $32, plus $100 for medical expenses; and this sum appears to us to be justified on the record. It is insisted that the award, which amounted to $5760, was erroneous in so far as it exceeded a total of $5000. It appears that under Sub-section D of Section 28 a limitation to a total of $5,000 is provided, but the act fails to attach this or any other lump sum limitation to the awards provided for in Sub-section C. Whether or not it is possible to account for this difference between total disability allowances and those for permanent partial disability, it is nevertheless clear that the limitation is laid down in one case and not in the other, and there is no such relation between the two as to call for the reading into Sub-section C of this limitation. That the two sub-sections are in no way related is stated in *Wilkinson* v. *Shale Brick Corp.*, 156 Tenn., 382. And, in the recent case of *Clayton Paving Co.* v. *Appleton,* 163 Tenn., 27, 39 S. W. (2d), 1037, it was held that the award fixed by Sub-section 16, Section 30, for accidental death was not subject to the limit of $5,000. In the opinion in that case Mr. Justice Cook said:

"The Legislature could have co-ordinated these subsections so that the aggregate of $5,000 allowable under section 28 (d) would control the compensation fixed by section 30, sub-section 16. But nothing in the words or

context of the original or the amendatory acts indicates such an intention."

While in that case a different Section was under consideration, the holding has application here.

Some complaint is made of the failure of the trial Judge to require petitioner to submit to further examination by physicians of the defendant, but we do not find that the trial Judge abused his discretion in this particular. Petitioner had been under the care of his employer's physician, or physicians, from time to time, and had been observed and examined by a number of physicians, including one or more acting for the defendant. They also had opportunity to observe him on the trial, and we think no injustice was done in this regard.

It results that the assignments must be overruled and the judgment affirmed.