GRIFFITH *v.* GOFORTH.

*(Nashville,* December Term, 1945.)

Opinion filed January 5, 1946.

Designated for publication June 6, 1946.

HENRY BARGER, of Chattanooga, for petitioner.

A. A. KELLY, of South Pittsburg, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is a compensation case in which both petitioner and defendant have appealed from the decree of the chancellor. We will refer to the parties as they appeared in the trial court. The chancellor found that the petitioner, George Griffith, was totally and permanently disabled, and "is entitled to recover under (Code, section 6878) subsection (e) as totally incapacitated from working at any occupation which brings in an income." He

further found that the injured employee was ''entitled to recover under subsection (d) five thousand dollars and the costs of the cause.''

The defendant denied that he was liable to pay compensation in any amount, insisting (1) that the injury, or injuries, did not arise out of and in the course of petitioner's employment, and (2) that the said injuries resulted from his wilful violation of the rules of the defendant in mining coal.

The defendant has filed four assignments of error, all of them relating to facts touching liability and the conclusions of the trial court which are claimed to be erroneous. It is contended that (1) there is no evidence to support the findings and judgment of the court; (2) that the testimony of the petitioner is contradicted by certain physical facts and hence there is no material evidence left to sustain the judgment of the court; (3) the court erred in holding that defendant had failed to carry the burden of proof and show that the petitioner was guilty of wilful misconduct.

The chief complaint of the injured employee, George Griffith, is found in his assignment of error that ''the chancellor erred in finding and decreeing that petitioner's allowance for compensation should be controlled by subsections (d) and (e) of Code section 6878, instead of subsection (c) of Section 6878.'' It is earnestly insisted that the trial court should have found that petitioner suffered permanent partial disability instead of total permanent disability; that by this decision of the chancellor the amount of recovery was erroneously limited to five thousand dollars.

It is conceded that petitioner suffered multiple injuries while mining coal for the defendant, caused by the ex-

plosion of powder or dynamite in a mine where he was at work.

In considering the question as to whether the injuries arose out of and in the course of petitioner's employment, it is necessary to recite the material facts showing the use of explosives in mining coal. Coal is shot down by boring holes in the face of the coal (sometimes several feet in depth), loading them with powder or dynamite, and then firing the charges by lighting a fuse. After lighting the fuses, the miner leaves his room so that he is in a place of safety when the explosion occurs. He does not return to his work until the beginning of the shift on the following day. Picks are used to "square up" rough places on the floor and rib of the mine. The loose coal when blasted from the surface is loaded into cars and pushed out of the room.

On the day of the accident in question the petitioner was alone in the room where he was at work. There were no eye witnesses to the accident other than the petitioner himself. Now the theory of the petitioner is that his injury resulted from an explosion of what is referred to in the record as a "failed shot"; in other words, there was a charge of powder or dynamite left in the mine that had not exploded, and while petitioner was "squaring up" the floor of the room in which he was working, the "failed shot" was caused to explode. There is an inference that the explosion was due to the petitioner using his pick in squaring up the floor of the room where he was working.

The defendant contends that all the physical facts show that this "failed shot" was exploded by the petitioner in wilful violation of mining rules; that instead of boring a new hole and charging it, he was boring out a "failed shot".

The petitioner, George Griffith, gave the following account of the accident:

"Q. 17. Now just tell the Court what you were doing at the time of the accident.

"A. I had my pick squaring up bottom, about seven inches thick and ten inches square, eight or nine feet from the face of the place. I hit into this, I don't know what caused it. What caused it to be there, to the best of my knowledge, it was a break-through place."

He made positive denial that he was boring out a "failed shot" as shown by the following:

"Q. Now, it is charged that you were boring out a shot at the time, is that true?

"A. I couldn't have been boring out a shot, squaring up the bottom.

"Q. What do you mean by squaring up the bottom?

"A. When I got my coal up I aimed to bore a hole, but this accident happened before I got the bottom squared up.

 &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Q. Now. I want to ask you whether or not you ever bored out any shots?

"A. No, sir, I never did."

The defendant, E. L. Goforth, testified in substance that he entered the mine after the explosion; that petitioner had an auger in the hole boring out dynamite, and that it exploded and shot the auger out.

In contradiction of this testimony and in support of the petitioner, one Herschel Slatton testified he took the tools of petitioner soon after the explosion and the auger (referred to by Goforth) had no signs of powder about it and that it was in good condition. He further testified

that the handle of one of the picks was broken and splintered.

We think the condition of petitioner's tools after the explosion, as testified to by this witness, is sufficient to support the finding of the chancellor that Griffith's injury did not result from his wilful violation of mining rules. The defendant undertakes to show in contradiction of petitioner that the explosion did not occur at the place testified to by him. Conceding that he was in error as to the exact place where it occurred, it furnishes no reason for the contention that his injury did not arise out of and in the course of his employment. The explosion occurred in the mine at a place where the petitioner was at work, and according to a witness, Sam Norris, he, Norris, had left two shots unfired in a wall between himself and where petitioner was at work. Moreover, we think, in view of the frightful injuries which petitioner sustained, he would hardly be expected to remember every detail about the explosion. If the explosion was not caused by his own misconduct, such as would bar his suit, the question of his right to recover compensation is not determined by his inability to point out the exact place where the explosion occurred.

From the above recitation of facts, we cannot do otherwise than find that there is some material evidence to support the finding of the trial court. In all our compensation cases a finding of fact by the trial court is not open to review by the Supreme Court when there is evidence to sustain the finding. *American Zinc Co.* v. *Lusk,* 148 Tenn. 220, 255 S. W. 39; *Ware* v. *Illinois Central R. Co.,* 153 Tenn. 144, 148, 281 S. W. 927; *Diamond Coal Co.* v. *Curnutt,* 179 Tenn. 278, 165 S. W. (2d) 575.

In *Knoxville Power & Light Co.* v. *Barnes,* 156 Tenn. 184, 188, 299 S. W. 772, 774, it was held, "Upon review,

the most favorable view of the evidence in support of petitioner's claim must be accepted. If there is material evidence to support the finding of the trial judge, his conclusion upon the facts is final. *Milne* v. *Sanders,* 143 Tenn. [602], 603, 228 S. W. 702; *Vester Gas Range Co.* v. *Leonard,* 148 Tenn. [665] 672, 257 S. W. 395.''

It is unnecessary that we cite other and later decisions to the same effect. The defendant's assignments of error are accordingly overruled.

We will now consider the petitioner's assignments of error. Under these assignments the sole question raised is as to the amount of the award. For an intelligent consideration and disposition of the case, it is important to note the nature and extent of petitioner's injuries and also the finding of the chancellor, as follows:

''Petitioner's injuries consist of loss of hearing im right ear 100%; loss of hearing in left ear 25%; loss of sight in right eye 75%; in left eye 20%; his right hand was amputated, resulting in loss of 80% of right arm; left arm lacerated, resulting in a loss of 15% of left arm; his right leg badly lacerated above knee, resulting in a loss of 75% of right leg and a loss of 15% of left leg, besides there was laceration about the groins and scrotum which caused the loss of his left testicle, which had to be removed. Particles of coal and foreign matter were embedded in his face, eyes and parts of his body, all on account of a violent explosion which occurred in defendant's mine while petitioner was digging coal therein. Said injuries are permanent and petitioner is totally and permanently disabled. Petitioner was alone in the room or place in the mines at the time the injury occurred, which is shown to have occurred at the time and place alleged in the petition.

"The proof establishes that there was an explosion of violent force in the room or place where petitioner was at work, at the time alleged."

It thus appears that the learned chancellor found that as the direct result of multiple injuries the petitioner was totally and permanently incapacitated "from working at any occupation which brings him an income." The award was made payable at the rate of $18 per week, not to exceed five thousand dollars. Now the petitioner contends that the amount should not be thus limited; that the chancellor should have found that he had sustained a permanent partial disability and awarded compensation under subsection (c) of Code section 6878, and for an amount in excess of five thousand dollars, as by pyramiding the number of weeks for which the statute allows compensation for the loss of certain members, he was entitled to recover for 692½ weeks at the rate of $18 per week, or a total of $12,565. The petitioner further insists that according to the chancellor's finding of injuries to certain members, eight in all, he would be entitled to recover for 536¼ weeks, which at $18 per week would total $9,652.50.

It will be noted that under subsection (c) of Section 6878 there is a schedule of the amount of compensation recoverable for the loss of specific members, as (1) loss of one member, and (2) loss of two members. It will be further observed that no provision is made for multiple injuries above two. Immediately following this schedule the statute provides:

"Pay for concurrent injuries.—Where an employee sustains concurrent injuries resulting in concurrent disabilities, he shall receive compensation only for the injury which produced the longest period of disability, but this section shall not affect liability for the concurrent loss of

more than one member, for which members compensations are provided in the specific schedule and in subsection (e) below. In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation in and by said schedule provided shall be in lieu of all other compensation.''

Now in the instant case it conclusively appears that the petitioner suffered a permanent partial disability to at least four of his members, to-wit, the right ear (total and permanent), left ear, twenty-five per cent, right eye, seventy-five per cent, left eye, twenty per cent, right arm (total and permanent), eighty per cent, loss of right leg, seventy-five per cent.

The above section of the Code which provides that ''he shall receive compensation only for the injury which produced the longest period of disability,'' could not apply to the multiple injuries (three or more) sustained by the petitioner. The schedule fixes the total number of weeks he shall be paid on account of permanent partial disability.

There is no question but that the petitioner has suffered permanent disability as to several members, but the chancellor could not, at least did not, decide which of these produced the longest period of disability. His difficulty in this regard may readily be appreciated as we view the nature and extent of petitioner's injuries. It was the chancellor's well considered judgment that the multiple injuries combined made it impossible for petitioner to work at an occupation that would bring him an income. It was upon this basis that he made his award under subsection (e) of Section 6878.

In determining the amount of compensation to be awarded in any case, the Court must construe the

statute in accordance with the intention of the Legislature. It is rare indeed that an employee receives injuries to so many members of his body as did the petitioner in the instant case. We cannot conceive that it was the intention of the Legislature, in making the schedule as found under subsection (c) to permit an injured employee to pyramid separate and distinct injuries to different members of his body, adding together the number of weeks for permanent partial disability to each member, until the total has aggregated 692 weeks, and be paid $12,565 as compensation therefor. We dealt with this question in *Liberty Mutual Ins. Co.* v. *Maxwell,* 164 Tenn. 1, 46 S. W. (2d) 67, and held that an injured employee might recover in excess of five thousand dollars for partial permanent disability. In that case the employee claimed compensation for loss of a leg and an arm. The trial judge made an award of 360 weeks at $16 per week and $100 for medical expenses, the allowance being made under subsection (c) of the act. The total award was $5,760. The employer there contended that this was error because under the statute it could not exceed $5,000. In responding to this alleged error, it was said (164 Tenn. at page 6, 46 S. W. (2d) at page 69, Mr. Justice CHAMBLISS speaking for the Court) :

"Whether or not it is possible to account for this difference between total disability allowances and those for permanent partial disability, it is nevertheless clear that the limitation is laid down in one case and not in the other, and there is no such relation between the two as to call for the reading into subsection (c) of this limitation. That the two subsections are in no way related is stated in *Wilkinson* v. *[Johnson City] Shale Brick Corp.,* 156 Tenn. [373], 382, 299 S. W. 1056, 2 S. W. (2d) 89. And, in the recent case of *Clayton Paving Co.* v.

*Appleton*, 163 Tenn. 27, 39 S. W. (2d) 1037, 1038, it was held that the award fixed by subsection 16, sec. 30 for accidental death was not subject to the limit of $5,000. In the opinion in that case Mr. Justice Cook said:

" 'The Legislature could have co-ordinated these subsections so that the aggregate of $5,000 allowable under section 28(d) would control the compensation fixed by section 30, subsection 16. But nothing in the words or context of the original or the amendatory acts indicates such an intention.' "

 In thus holding that an injured employee may recover compensation in excess of five thousand dollars where he has sustained permanent partial disability, it is clear that the Court did not mean to make the award by adding the number of weeks allowed for loss of each member and multiply it by the average weekly wage. The statute, subsection (c) of Section 6878 of the Code, provides "for the loss of one arm and one leg, fifty per centum of the average weekly wages during four hundred weeks." The trial judge found the employee had suffered ninety per cent partial loss of one arm and one leg. Now ninety per cent of four hundred weeks is 360 weeks, which, when multiplied by the average weekly wage, amounted to $5,760. Although our statute does not permit us to add the total number of weeks allowed for permanent partial disability to individual members, and multiply this by the average weekly wage, yet, if it appears that the compensation for injury to two members as provided in the statutory schedule is in excess of the amount allowed for total permanent disability, we think he should be paid the greater amount. The rule of liberality in construing the statute should be followed in determining the amount to be paid. The courts have generally construed the statute so as to give injured employees every

benefit which it was reasonably intended to confer, the object of the statute being to prevent injured workmen from becoming public charges.

■ In 71 C. J., p. 354, under Workmen's Compensation Acts, it is said:

". . . nor should a strained construction be given to meet the exigencies of a particular case, nor the terms of the act overridden in order ,to widen the remedy or bring about objects or results not within its expressed intent."

Many cases are cited in the footnotes in support of the foregoing sound rule of construction.

■ We neither "widen the remedy" nor go beyond the "expressed intent" of the statute in holding that petitioner is entitled to recover for partial permanent disability where it exceeds the amount he might recover for total permanent disability. We limit the amount, however, to conform to the expressed, or clearly implied, intent of the statute. Our compensation act provided that an injured workman may recover "for the loss of one arm and one leg, fifty per centum of [his] weekly wages for four hundred weeks." (The act has since been amended to allow a recovery of sixty per cent for the loss of such members). The chancellor found as a fact, which is not disputed, that petitioner suffered eighty per cent loss of his right arm and seventy-five per cent loss of his right leg, in addition to other injuries. Now under the prayer of the bill for general relief, the trial court was fully authorized to make an award for partial permanent disability, or for 320 weeks at $18 per week, making a total of $5,760, instead of awarding $5,000 for total permanent disability. He doubtless would have done so had the difference been called to his attention. In thus deciding the

instant case, we are following the rule that was applied in *Liberty Mutual Ins. Co. v. Maxwell, supra.*

The decree of the chancellor is modified and affirmed in accordance with this opinion. The amount of the award will be paid at the rate of $18 per week until it is fully satisfied. The defendant will pay the costs of this appeal.