E. I. DuPont DeNemours, & Company, Respondent,

*v.*

Johnnie C. Johnson, Petitioner.

368 S. W. 2d 295.

(*Nashville*, December Term, 1962.)

Opinion filed June 4, 1963.

Joseph L. Lackey, Nashville, for petitioner.

CHARLES L. CORNELIUS, W. OVID COLLINS, JR., Nashville, W. B. DeRIEMER, Wilmington, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a Workmen's Compensation case in which the Trial Court awarded compensation for 20% permanent partial disability and medical expenses alleged to have resulted from the occupational disease of contact dermatitis. The petition for compensation alleges that:

"On or about the 10th day of January, 1961, the petitioner noticed a rash developing on his hands and on consulting his physician his condition was diagnosed as Contact Dermatitis which the petitioner avers was contracted and brought about by his being required to work in and handle chemical substances in the course of his employment by defendant. This condition has subsequently appeared on other parts of his body including his scalp and forehead and over his hands and arms, which he avers greatly irritates and hinders him in pursuing his duties in the course of his employment in occupations which he is qualified to per-

form, and he avers that his disability in this respect is at least 50% to the body as a whole.''

The defendant in its answer, among other things, stated:

''Defendant avers that the condition from which petitioner is now suffering, if it can be described or designated as an 'occupational disease' within the meaning of the Code sections mentioned, the defendant avers that petitioner had such occupational disease on March 12, 1947, and that such occupational disease is, therefore, not covered under the Workmen's Compensation Law of Tennessee.''

Only two witnesses testified at the trial, the petitioner and a Dr. Miller on the medical staff of the defendant. Without objection, numerous medical reports and records were introduced in evidence.

The only finding of facts made by the Trial Judge other than the findings made in the decree is as follows:

''THE COURT: I can't follow the 50% idea. I think the man is entitled to some compensation, but I can't see that it is anywhere near 50%. As I look at the man, and there's no medical proof here, as I see it, that I am absolutely bound by one way or the other. These things are to be construed liberally, and you all know it, under the terms of this Workmen's Compensation Law. I looked at the gentleman here on the witness stand, and I see him sitting there, see his hands, and there's proof here certainly that he is able-bodied except for a condition of this kind that is a recurring condition. That is what all of them seem to think.

I am willing to give him, and will give him, 20% dis-

ability, that would be how many weeks, Mr. Lackey, figure that out.

MR. LACKEY: That would be eighty weeks.

THE COURT: 80 weeks at $34.00, plus that $150.00. I will let him have that, too.''

The following findings are included in the judgment of the Trial Court:

''1. That petitioner developed an occupational disease known as contact dermatitis in the course of his employment by defendant at some date prior to March 12, 1947;

2. That on said date of March 12, 1947, said disease had developed to such an extent that it could be and was diagnosed as contact dermatitis;

3. That subsequent to said date of March 12, 1947, petitioner, over a period of approximately fourteen years was treated from time to time for contact dermatitis but would recover when he changed his work;

4. That the disease would re-occur when petitioner was again exposed in his work with defendant to caustic and acid, one such reoccurrence being on or about the 10th day of January 1961, the date set out in the petition filed in this cause;''

The record shows that the petitioner entered the employ of the defendant in June 1941 and, except for an absence for military service from 1942 to the fall of 1945, remained an employee of the defendant until April 25, 1961, when he was discharged under the defendant's ''Three Garnishment Rule''. In 1946 petitioner's work required him to come in contact with chemicals. He

developed a breaking out on his wrists and fingers which spread all over his hands and face. In 1947 it spread to his scalp and he lost his hair. His condition was diagnosed as contact dermatitis prior to March 12, 1947. He first went to a Dr. Rhea, his family physician, and was referred to Doctors King, Hamilton and Buchanan, dermatologists, in Nashville. On March 25, 1947 he entered the Veterans Hospital in Nashville for this condition and was discharged April 5, 1947. Upon returning to work after this hospitalization, he was transferred to another department where he did not come in contact with chemicals or caustics. His condition improved. On direct examination, petitioner testified that he was finally discharged by Doctors King, Hamilton and Buchanan in 1948. On cross examination, he stated these doctors continued to treat him at intervals until 1954 for the condition on his head, but not for his hands. In September 1958 petitioner was under the care of his personal physician, a Dr. Carl A. Dent, who placed him in the Riverside Sanitarium Hospital in Nashville from September 15, 1958 to October 10, 1958 with a diagnosis of contact dermatitis of the scalp. In May of 1960 the petitioner was hospitalized by this same doctor for sciatic neuritis, at which time the doctor found no evidence present of contact dermatitis. The petitioner testified that shortly before January 10, 1961 he was transferred to a department which required him to handle caustics, flake acids and various types of chemicals. He further stated that about January 10, 1961 the places on his wrists came back and his hands and fingers began to swell and crack open. He went to the Chief Director of Medicine at the defendant's plant at that time and was given medication and a prescription for his condition. As stated, thereafter on April 25, 1961 he was discharged because of garnishments on his salary

pursuant to the rule of the defendant. Thereafter petitioner went to work for the Cincinnati Sheet Metal & Roofing Company. The record does not reflect the dates of his employment by that company, but petitioner testified that the galvanized tin he came in contact with on that job was "coated for acid resistance" and that the places on his wrists and hands came back and he had to quit that job.

The record shows without contradiction that from 1946 up to the date of trial the dermatitis had manifested itself whenever the petitioner came in contact with soap, caustics and chemicals. The report of Dr. Hamilton of May 6, 1946 states:

"The eruption on his hands is much better, but *he states that it got worse when he went back to work with soap.*" (Emphasis supplied.)

The petitioner testified:

"I can tell the minute I get around them (chemicals), as far as stinging and itching from them."

He further stated:

"No, I can't work around soap."

The petitioner's condition was described by his Dr. Rhea in a report dated May 8, 1961 as follows:

"Johnnie C. Johnson has been seen by me numerous times over the last 15 years because of rash on his hands. He was referred to Dr. Hamilton who called it contact dermatitis. The DuPont Company changed his work and he recovered.

"Recently he was put handling caustic and acid and the dermatitis reoccurred. He has now left the company.

He was seen at my office April 28, 1961.

*"In my opinion, he will recover."* (Emphasis supplied)

On October 20, 1961 a report by petitioner's Dr. Dent states:

"On May 1, 1961 patient was seen with rash on his hands with considerable excoriation and swelling. Diagnosis of Contact Dermatitis drug or chemical was made again, and again this condition responded to treatment so that patient did not return in one week as instructed.

"He is seen today in the office with a rash on his forehead, of contact dermatitis nature *which has been present for 1 week.* It is my opinion that Mr. Johnson has recovered completely from his illness each time but that subsequent exposure to the offending chemical causes a recurrence of the contact dermatitis." (Emphasis supplied)

The petitioner himself testified that, while handling galvanized metal in the Cincinnati Sheet Metal & Roofing Company, following the termination of his employment by the defendant, "the places on my wrists *came back* and my hands, and I just had to quit." (Emphasis supplied)

The foregoing evidence in the record without contradiction shows that if at any time after 1946 the petitioner came in contact with chemicals, acids, caustics or soap, his dermatitis would become active. When he was removed from such contacts his condition would clear up. On May 8, 1961, following the termination of his employment, his Dr. Rhea stated he was of the opinion he would recover from the manifestations of dermatitis. We can

130

only draw the conclusion that he did so recover because Dr. Dent in October 1961 stated that the manifestations of dermatitis had been present for one week. The petitioner testified, as stated, that the places came back on his hands and wrists while working with galvanized metal following the termination of his employment by the defendant. The uncontradicted evidence in the record shows that the only permanent condition of the petitioner was his inability to come in contact with chemicals, acids, caustics and soap without having an exacerbation of his dermatitis. The record shows without contradiction that this condition had existed since prior to March 12, 1947. T.C.A. sec. 50-1102 provides:

"An occupational disease which an employee had on March 12, 1947, shall not be covered hereunder. An employee has an occupational disease within the meaning of this law if the disease or condition has developed to such an extent that it can be diagnosed as an occupational disease. In every suit for compensation benefits, the burden shall be on the employee to prove that he did not have, as of the said date, the occupational disease for which he is seeking compensation."

The conclusion is inescapable that the active manifestation of petitioner's dermatitis cleared up before October 1961 and was temporary in nature. The active manifestations recurred after the termination of petitioner's employment with defendant and while he was working for another employer handling galvanized metal. The permanent disabling factor of petitioner's occupational disease, which is his inability to come in contact with certain substances without an exacerbation of his dermatitis, has been present since prior to March 12, 1947 and is therefore not compensable under the

Tennessee Workmen's Compensation Act. The episode of active dermatitis which began in January 1961 was temporary in nature and subsided. We are therefore of the opinion that under the undisputed proof in the record, in the light of T.C.A. sec. 50-1102, the petitioner has sustained no compensable permanent partial disability. It should also be noted that the uncontradicted proof shows the last time petitioner lost any time from his employment by the defendant because of an exacerbation of his contact dermatitis was in the fall of 1958 when he was hospitalized by Dr. Dent. Termination of his employment by the defendant in April 1961 was in no way occasioned by his physical condition. According to the testimony of the petitioner at the time of the trial, he was last injuriously exposed to the hazards of the disease while working for another company.

In arriving at the foregoing conclusion, we have done so fully recognizing the rule that in a Workmen's Compensation case the finding of the Trial Court supported by material evidence will not be disturbed in this Court. *Tallent v. M. C. Lyle & Son,* 187 Tenn. 482, 216 S.W.2d 7; *Anderson v. Volz Construction Company,* 183 Tenn. 169, 191 S.W.2d 436; *Griffith v. Goforth,* 184 Tenn. 56, 195 S.W.2d 33, and numerous other cases. The rule of the above cited cases is strictly adhered to. This rule is not applicable to a case where the Trial Judge has overlooked undisputed material evidence bearing on the determinative issue or where the determinative issue involves a mixed question of law and fact. *Sullivan v. Green,* 206 Tenn. 42, 331 S.W.2d 686.

The judgment of the Trial Court is reversed and the petition is dismissed at petitioner's cost.