The TRAVELERS INSURANCE COMPA-
NY and Vol Construction Co.,
Inc., Appellants,

v.

Paul FLATFORD, Appellee.

Supreme Court of Tennessee.

June 6, 1977.

W. Morris Kizer, Arthur G. Seymour, Jr., Frantz, McConnell & Seymour, Knoxville, for appellants.

Robert T. Mann, Mann & Justice, Knoxville, for appellee.

OPINION

COOPER, Chief Justice.

Vol Construction Company, Inc. and its insurance carrier, The Travelers Insurance Company, have appealed from the decree of the Chancery Court of Knox County awarding appellee, Paul Flatford, benefits under the Workmen's Compensation Act. The appellants insist there is no competent material evidence to support the chancellor's finding that appellee is totally and permanently disabled. Corollary to the primary issue, appellant insists (1) the trial judge erred in admitting into evidence medical testimony that appellee "possibly" had a ruptured disc in the lower lumbar area, and (2) that the testimony of the treating physician on the issue of permanency was contradicted by his clinical findings, and consequently lacked probative value. Appellants also insist that the treating physician's determination of permanent disability was based solely on appellee's subjective complaints and was not competent to support an award of permanent disability.

Appellee, now thirty-four years of age, only has an eighth grade education and is without specialized skills or training for work other than as a laborer. On June 20, 1975, while working as a laborer for the Vol Construction Company, appellee was applying the brakes on a tractor while another employee connected a back hoe. In the course of the procedure the back hoe, which had not been pinned properly, slipped and fell on appellee, pinning him to the seat of the tractor and then knocking him from the tractor onto the ground. Immediately after the accident, appellee complained of pain in his lower back and left leg and was taken to the emergency room at the University of Tennessee Hospital. Subsequently, he was referred to Dr. Charles Gouffon, an orthopedic specialist, for treatment.

Dr. Gouffon testified that on initially examining appellee "we felt it was reasonable to think there was a possibility [appellee] had a ruptured disc." On July 12, 1975, the occasion of appellee's discharge from his first period of hospitalization, Dr. Gouffon diagnosed appellee's injury as "an acute lumbar strain." Dr. Gouffon also noted in his discharge summary that appellee had muscle spasm in the lumbar region. No other objective signs of injury were noted by Dr. Gouffon during his treatment of appellee, including a second period of hospitalization. He did state, however, that:

"This man's [appellee's] symptoms of pain, loss of motion tenderness to fist percussion, are all very subjective. There is no question about that. But the man has had the same complaints over a period of six months; persistently the same complaints lend at least a degree of objectivity to these complaints. Now, in that even the most intense malinger would have a hard time remembering exactly what he told you six weeks ago or bending in exactly the same way. I don't want, therefore, for everyone to assume that this man has objective evidence of a problem. He does not. But he at least has persistent subjective complaints that haven't changed."

Dr. Gouffon concluded from his examination and treatment of appellee that appellee can not do repetitive bending or prolonging standing without suffering recurrent back pain, and that appellee should limit his weight lifting to twenty pounds, unless surgery is performed. Dr. Gouffon further testified that appellee has a permanent partial disability of ten percent to the body as a whole on a clinical basis.

The record also contains written statements of Dr. Gouffon to the effect that appellee "probably" has a ruptured disc, and that his "total disability will be permanent unless he submits to surgery." Dr. Gouffon explained that the statements were given appellee to aid him in obtaining food stamps and payment of disability credit insurance on a loan by Cumberland Capital.

Also on the issue of disability, Dr. Gouffon wrote counsel for appellee on February 13, 1976, three months before trial of this case, that:

"Mr. Flatford probably should limit his weight lifting to less than 20 lbs. unless he has surgery performed. If the surgery is performed and is successful, I would think that he might well return to full work without any limitations on the weight he could lift."

The record also shows that when in the course of treatment, surgery became a possibility, appellee requested a second medical opinion. Dr. Gouffon then referred appellee to Dr. Dennis Coughlan, an orthopedic specialist, who examined appellee on August 26, 1975, and September 15, 1975. The report prepared by Dr. Coughlan, which was admitted in evidence by agreement, discloses that he "found lumbar paraspinal muscle spasm" present on examination of appellee, and that:

"In view of the present findings and the continuation of symptoms that this man's back will probably have to be explored sometime sooner or later. If a ruptured disk or extruded fragment is found, I think he probably will benefit considerably from surgery. If no ruptured disc is found he may very well be made worse by surgery."

The chancellor concluded from this medical evidence and from testimony of appellee as to his physical condition, that appellee "has a disabling injury to the back, which is probably a back strain and possibly a ruptured disc. And that the situation in which he finds himself is the result of the accident at his employment." The chancellor went on to state that he was certain "it would be a misapplication of the act to make a finding that [appellee] did not sustain and continue to have injury where the only way to precisely determine what is wrong with him is to have an operation, which may cause him further injury." The chancellor, pointing to the fact that the limitation placed on appellee's ability to work by his injury effectively took him out of the market for a laborer, found that appellee was "one hundred percent disabled."

Recognizing that Dr. Gouffon's testimony, on its face, is sufficient to support the chancellor's findings, appellant insists that the testimony is "so self-contradictory and speculative with respect to the permanence of [appellee's] injuries that it lacks probative value." On reading Dr. Gouffon's testimony in context, we find it to be neither contradictory nor speculative. There is no doubt but that Dr. Gouffon was convinced that appellee has a permanent partial disability from an on-the-job injury, which affects appellee's ability to work as a laborer. At most, it can be said that Dr. Gouffon is not sure whether the injury is to a disc or is an acute lumbar sprain but, as pointed out by the chancellor, that doubt can not be resolved by anyone short of the performance of surgery on appellee.

Appellant also insists that Dr. Gouffon's testimony on the issue of permanence of disability is based solely on subjective symptoms and thus is without probative value, citing *Bishop Baking Co. v. Forgey*, 538 S.W.2d 602, 604 (Tenn.1976) and *Reynolds v. Liberty Mutual Ins. Co.*, 496 S.W.2d 890 (Tenn.1973). In the cases cited, this court held that testimony of an examining physician on the issue of permanency of injury had no probative value where his testimony was based solely on subjective complaints. But that is not the situation in this case. Dr. Gouffon was the treating physician. As such, his evaluation of appellee's physical condition was not based solely on appellee's subjective complaints, but was based on several physical examinations, some of which revealed objective signs of injury, the treatment afforded appellee over several months and appellee's response to that treatment. The fact that Dr. Gouffon noted no objective signs of injury on several examinations of appellee, though important in evaluating Dr. Gouffon's testimony, *per se* would not destroy the probative value of his testimony on the nature and extent of appellee's injuries.

Judgment affirmed. Costs are adjudged against appellants.

FONES, HENRY, BROCK and HARBISON, JJ., concur.