TENNLITE, INC. and Aetna Life & Casualty Insurance Company, Appellants,

v.

Wendell Hyman LASSITER, Appellee.

Supreme Court of Tennessee.

Feb. 6, 1978.

Thomas H. Peebles, III, John W. Wade, Jr., Trabue, Sturdivant & DeWitt, Nashville, for appellants.

Samuel L. Swann, Springfield, for appellee.

## OPINION

MARTHA CRAIG DAUGHTREY, Special Judge.

In this worker's compensation case, the employee, Lassiter, was found by the trial judge to be totally and permanently disabled as the result of multiple injuries re-

ceived in an industrial accident. On appeal, the employer and the employer's insurance carrier contend that the judgment must be reversed because (1) the award under T.C.A. § 50–1007(d) was legally improper, the injuries being solely to scheduled members covered by T.C.A. § 50–1007(c), and (2) there was insufficient evidence to support a determination that the injuries received were totally and permanently disabling. For the reasons set out below, we reject the appellants' contentions and affirm the judgment of the trial court.

There is no dispute as to the cause or the anatomical extent of the employee's injuries. The boom of a crane fell on Lassiter while he was operating a crusher feeder on company premises, pinning both of his thighs and his left hand and wrist. He was hospitalized for six weeks and underwent surgery on more than one occasion during an eighteen month period following the accident. Lassiter, who is left-handed, was eventually forced to undergo amputation of the index finger of his left hand. His orthopedic surgeon testified that Lassiter sustained 15% permanent anatomical impairment to his left leg, 15% impairment to his right leg, and 35% to his hand. The doctor declined to make an estimate of his patient's earning disability or "industrial impairment," saying only that it would probably be greater than the anatomical impairment sustained.

According to uncontroverted proof at trial, as the result of his injuries Lassiter is now unable to do any climbing or heavy lifting (even assuming he is able to grasp an object for purposes of lifting), because of permanent damage to his thigh muscles. The physician testified that climbing or lifting would likely cause Lassiter to "collapse" because of muscular incapacity. He thus rated Lassiter's anatomical disability to the body as a whole at 25% impairment. Again, he offered no estimate as to overall industrial impairment.

The employer and carrier insist that the award should have been limited to the amounts provided under T.C.A. § 50–1007(c), arguing that the injuries to the employee's legs and left hand are injuries to scheduled members and that recovery must be awarded exclusively on the basis of the formula set out in the subsection (c) schedule. Significantly, the appellant's brief is silent as to how the award for scheduled loss should be arithmetically calculated under the provisions of that schedule.

■ A thorough review of the worker's compensation statute and relevant case law convinces us that the injuries suffered by the employee in this case are unscheduled injuries for purposes of § 50–1007(e), which presently provides:

> When an injury not otherwise specifically provided for in this chapter as amended, totally incapacitates the employee from working at an occupation which brings him an income, such employee shall be considered "totally disabled," and for such disability compensation shall be paid as provided in subsection (d) hereof, provided that the total amount of compensation payable hereunder shall not exceed forty thousand dollars ($40,000), exclusive of medical and hospital benefits.

We conclude that the injuries here are "not otherwise specifically provided for" under Title 50, Chapter 10, and we therefore hold that there was no legal impediment to an award under the permanent total disability provision of § 50–1007(d).

By providing specific formulas for combined injuries to certain members, the legislature has recognized the virtually uncontrovertible fact that a combination of injuries to members of the body has a greater disabling effect than the mere arithmetical sum of individual scheduled awards would reflect. T.C.A. § 50–1007(c). The award for a simultaneous injury to a leg and hand (based on 400 weeks) is greater, for example, than the sum of awards for injury to a leg (200 weeks) and a hand (150 weeks).

But the subsection (c) provisions for combined injuries are limited to those involving *two* members. Thus, we must now decide whether the legislature intended in the event of multiple injuries to three or more members that an award be based exclusively on some combination of the scheduled

provisions. We think they clearly did not. Not only does the statute reflect a policy against mere arithmetical recovery for multiple injuries, as discussed above, but it must also be noted that the standards for determination of an award for the multiple injuries sustained in this case are wholly ambiguous, if calculated by the schedule alone: Should the trial judge have based the award upon the combined loss of use of two legs *plus* the loss of use of a hand (400 weeks plus 150 weeks, for a total of 550 weeks)? Or should he have based it upon the combined loss of use of a leg and a hand *plus* the loss of use of a leg (400 weeks plus 200 weeks, for a total of 600 weeks)? While it would be possible to resolve this dilemma by awarding the greater amount on the basis of the requirement of liberal construction in favor of the employee, T.C.A. § 50–918, we think it is more in keeping with that very rule to hold that multiple injuries to three or more members are not covered by the schedule set out in subsection (c).

This court has previously dealt with the question of multiple injuries to more than two scheduled members. In *Griffith v. Goforth*, 184 Tenn. 56, 195 S.W.2d 33 (1946), the employee had suffered injuries to a total of eight scheduled members, as the result of a dynamite explosion. The chancellor found total permanent disability and awarded the then statutory maximum of $5,000. The employee appealed this decision, requesting an award on the basis of the arithmetical sum of the amounts recoverable for individual injuries to scheduled members, which arithmetical sum would have been approximately double the maximum amount awarded for total permanent disability.[1]

Although the posture of the *Griffith* case is inverse to the one before us, the opinion is nevertheless instructive for our purposes. The *Griffith* court noted that the compensation statute provides limitations on the amounts recoverable for the loss of a single member and for the loss of two members, but held that "no provision is made for multiple injuries above two." 195 S.W.2d at 36. The court then disallowed the pyramiding of injuries to scheduled members.[2]

■ We adhere to the interpretation of the compensation statutes adopted in *Griffith, supra*, to the effect that multiple injuries of three or more members are not scheduled injuries under § 50–1007(c). This holding is in conformity with legislative policy and is in harmony with our own decisional law and that of other jurisdictions. *Griffith v. Goforth, supra. Accord, Williamson v. Bush & LaFoe*, 294 So.2d 641 (Fla.1974); *Superior Construction Co. v. Day*, 127 Ind.App. 84, 137 N.E.2d 543 (1956); *Engle v. Industrial Commission*, 77 Ariz. 202, 269 P.2d 604 (1954); *Berg v. Sadler*, 235 Minn. 214, 50 N.W.2d 266 (1951). *See generally* A. Larson, *The Law of Workmen's Compensation* § 58.20 (1976).

Having concluded that the injuries here are unscheduled, we must now decide whether the evidence at the hearing was sufficient to support the trial court's finding that the injuries were totally and permanently disabling and thus compensable under § 50–1007(d), or whether the case must be remanded to permit a determination under § 50–1007(c) of the extent of the employee's permanent partial disability in

---

1. Such a recovery is no longer possible, because the maximum benefits for permanent partial disability under subsection (c) and for permanent total disability under subsection (d) are now the same. T.C.A. § 50–1007(c) and (d). There was no maximum recovery for permanent partial disability resulting from scheduled injuries at the time *Griffith* was decided. *See* Code 1932, § 6878(c).

2. Had the employee prevailed on this question, the result would have been an award greatly in excess of the maximum amount recoverable for total permanent disability. However, the court did permit recovery slightly in excess of the maximum provided for total permanent disability, for reasons which are not relevant to this case and which are no longer valid because of subsequent amendments to the statute. *See* fn. 1, *supra*. In so doing, the *Griffith* court announced that its result was in keeping with the "rule of liberality in construing the statute . . . so as to give injured employees every benefit which it was reasonably intended to confer . . . ." 195 S.W.2d at 37.

proportion to the body as a whole. We conclude that there is material evidence sufficient to sustain the trial judge's finding and that a remand is therefore unnecessary.

In addition to the physical incapacities discussed above, the proof showed that because of his injuries Lassiter was no longer able to do work around the home and that he had been forced to abandon altogether his part in the family's tobacco farming operation. And although Lassiter was working for the same employer at the time of the hearing, it was clear that this was largely the result of his employer's magnanimity: the company had hired an additional worker to assist Lassiter in the performance of his job, and his supervisor testified that under normal circumstances he would not be allowed to hire a person with Lassiter's disabilities. The proof further showed that Lassiter had a ninth grade education, that his only previous employment was as a gas station attendant, and that, while his only skill and training was as a manual laborer, he was no longer able to lift, to carry, to walk distances, or to stand for any appreciable length of time. In terms of manual dexterity it must again be noted that Lassiter is a left-handed person and that his left hand is now seriously impaired because of the amputation of his left index finger and the permanent impairment of three other fingers on his left hand.

Under such circumstances as these, the mere fact that the employee is subsequently re-employed through the magnanimity of his former employer is no bar to a finding of permanent disability. *Skipper v. Great Central Ins. Co.*, 225 Tenn. 584, 474 S.W.2d 420 (1971). In his memorandum of law the trial judge cited several authorities which stand for the proposition that legal disability is not synonymous with and may exceed medical disability for purposes of determining partial or total compensability. *See, e. g., Employers-Commercial Union Co. v. Taylor*, 531 S.W.2d 104 (Tenn. 1975); *Smith v. Hale*, 528 S.W.2d 543 (Tenn. 1975); *Federated Mutual Implement & Hardware Ins. Co. v. Cameron*, 220 Tenn.

636, 422 S.W.2d 427 (1967). By implication, the trial court found that the employee "is unable to perform his work and that he does not have the education, training, and other elements which would provide him with job opportunities in other lines." His finding of total disability is thus in accord with the result reached by this Court in *Travelers Insurance Co. v. Flatford*, 551 S.W.2d 695 (Tenn.1977).

The judgment of the trial court is in all respects affirmed.

HENRY, C. J., COOPER and BROCK, JJ., and McCANLESS, Special Judge, concur.