Anderson *v.* Volz Const. Co. *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed January 7, 1946.

EUGENE MADDEN and WINCHESTER & BEARMAN, all of Memphis, for petitioner.

ALBERT G. RILEY, of Memphis, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

In the Probate Court of Shelby County, under provisions of the Tennessee Workmen's Compensation Act, Code 1932, Sec. 6851 *et seq.*, Mary Anderson, as widow of Allen Dan Anderson, filed claim for his death against the defendant Volz Construction Company and its insurer, The American Mutual Liability Insurance Company.

On July 26, 1943, Dan Anderson was employed by the Volz Construction Company as a common laborer, digging manholes on construction work near the Millington Air Base in Shelby County. It was a hot summer day but

there was nothing abnormal about the heat which was between 90 and 100 degrees Fahrenheit. The construction work consisted of a trench cut by machine, about 11 feet, 3 inches deep. In this trench a pipe was laid and every 300 feet it was necessary that a manhole be dug, which apparently was of the same depth as the trench but was enlarged from the width of the trench, some 18 inches, to a diameter of 6 feet. It was this circular enlargement which was made by hand labor. Deceased had dug one manhole and had been working steadily all day without complaint and without apparent or visible ill effect from the heat. Some time between three and four, as he neared the completion of this manhole, he had talked with his white foreman, and made no complaint. He had been instructed, after completing that manhole, to commence another which, on the plan, was to be dug in the middle of a black-top highway. He had marked off this manhole and chipped out some of the black-top when he dropped dead. So far as the record discloses, his death was instantaneous. No witness testified that he was alive after he fell to the ground. His clothing was, of course, wringing wet with perspiration, but it is in evidence that this was neither unusual nor abnormal under the circumstances.

His body was taken to an undertaker's and later embalmed. Two or three days after the death, an autopsy was performed by Dr. Moss, pathologist at St. Joseph's Hospital, and the autopsy was viewed by Dr. Pearce, representnig the Insurance Company, and Dr. Johnson, a colored physician, representing the widow. Dr. Moss and Dr. Pearce were called to testify by the defendant, but Dr. Johnson was not called to testify by the petitioner, and his failure to testify is unexplained.

The autopsy, according to Dr. Moss who performed it, and Dr. Pearce who witnessed it, revealed an anomalous right artery, which ran in an abnormal course, "upward and back," between the aorta and the pulmonary artery, so that by this abnormality which was congenital, this right coronary artery was in a position to be compressed or pinched between the root of the aorta and the root of the pulmonary artery. In the opinion of these doctors, such compressing or pinching off of the right coronary artery had impeded the flow of blood to the heart to such extent as to cause sudden death. The heart of the deceased was found to be greatly enlarged, weighing 550 grams, as compared with a normal of 300 grams. The heart enlargement had been gradual over a long period of time and there was some arteriosclerosis.

Drs. McMahon and Polk called to testify on behalf of the petitioner, could not testify as to the cause of death. They were asked hypothetical questions on which they testified that "sun stroke, heat exhaustion, or heat prostration" *could* have caused the death under the facts disclosed by the hypothetical questions.

The trial judge found that death occurred in the course of the employment but did not arise out of the employment. Crediting the evidence of the two physicians introduced by the defendant, the learned trial judge found:

". . . there must be apparent to the rational mind a causal connection between the condition under which the work is required to be performed and the resulting injury. The evidence in this case affords no such connection between the digging of the manholes by the deceased workman and his sudden death. It, therefore, results that this is not a compensable case under the Tennessee Workmen's Compensation Act."

■ To recover, the petitioner had to prove by a preponderance of the evidence, the allegation of her original petition, that death was caused by "heat prostration, sun stroke or heat exhaustion." Death so caused is compensable under *Patten Hotel Co.* v. *Milner,* 145 Tenn. 632, 238 S. W. 75, and *King* v. *Buckeye Cotton Oil Co.,* 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086. Or under the same conditions she had to prove by a preponderance that, as alleged in the amended petition, a previous heart ailment or disease was so aggravated "by his working conditions and the heat of the day" as to cause death. Such death is compensable under *Sanders* v. *Blue Ridge Glass Corp.,* 161 Tenn. 535, 33 S. W. (2d) 84.

■ On appeal under the Workmen's Compensation Act, we do not reweigh the evidence, but search the record only so far as is necessary to determine that there is material evidence to support the finding of the trial judge. *Tennessee Products Corporation* v. *Gravitt,* 182 Tenn. 54, 184 S. W. (2d) 164; *Tipton* v. *N. A. Rayon Corp.,* 181 Tenn. 434, 181 S. W. (2d) 619. The weight of evidence and the credibility of the witnesses are finally determined in the trial court.

■ Petitioner's first assignment is that there was no material evidence to support the finding of the trial judge that the cause of death was a *rupture* of the coronary artery. In this connection the learned trial judge found:

"According to Drs. Moss and Pearce, the autopsy revealed an anomalous coronary artery in the right shoulder which was compressed by the roots of the aorta and of the pulmonary artery which, in their opinion, produced a *rupture* of the coronary artery, resulting in death; that death from heat prostration is not sudden, as in this case. The heart of the deceased weighed 550 grams, whereas a normal heart weighs 300 grams." (Italics ours.)

It is true that there was no material evidence of a "rupture." Doubtless, the trial judge used the word "rupture" for "compression," by inadvertence. It is immaterial to the petitioner's case whether there was a rupture or merely a constriction or compression, since the elements of the finding, fatal to petitioner's recovery, remain in that it was found that heat prostration was neither the direct nor aggravating cause of death. The only positive evidence in the record is that the cause of death was the stoppage of the flow of blood to the heart by the compression of the anomalous right coronary artery by the root of the aorta and the root of the pulmonary artery, and that neither heat, humidity nor the other conditions of the employment were causally connected with the death.

Dr. Pearce testified.:

"Q. And what actual condition do you believe, in your opinion, caused the immediate death, that is what condition of the heart failure? A. In my opinion it was caused by an acute anomaly of the heart because of an obstruction in the blood supply to the heart muscle.

"Q. In other words, that means that the blood supply to the heart was cut off and suppressed in some way? A. Yes.

"Q. Now, did you find the factor which suppressed it, in your opinion? A. The factors were present which would substantiate that opinion.

"Q. And what were the factors that you think cut off the supply of blood? A. The first was the diseased blood vessels and enlarged heart, and then the deformity of the coronary artery.

"Q. The deformity. Did the deformity play a part in this death, in your opinion? A. Yes, sir.

"What was its effect? A. To cut off the blood supply to the heart muscle."

Both doctors introduced by the defendant agreed that there were many symptoms and circumstances which negatived the possibility of heat prostration or sun stroke. These were the suddenness of the death, the absence of edema in the brain, and the condition of the brain, spleen and other organs. The hypothesis of heat prostration is not only not supported by the facts, but none of the symptoms which normally accompany heat prostration were present.

We find it unnecessary to consider the other assignments separately, as they must all be overruled by our determination that there was substantial material evidence to support the finding of the trial judge.

Though assignments III-VII are variously phrased, they all assail the determination of the preponderance of the evidence by the trial judge. The preponderance of the evidence is not an open question in this Court, which is bound by the finding of the trial judge in that regard, if there was any material evidence to support it. *Templeton* v. *Wilson*, 174 Tenn. 65, 68, 123 S. W. (2d) 824; *Tennessee Products Corporation* v. *Gravitt, supra; Tipton* v. *N. A. Rayon Corp., supra.*

One assignment contains an allegation that the judgment was "contrary to the law." No error of law is suggested or specified. The assignment is merely formal and clearly does not comply with Rule 14(2), 173 Tenn. 874.

If there was error in the finding of the weekly wage of Petitioner's deceased husband, it is immaterial under our disposition of the case.

Affirmed.