Fidelity & Casualty Company of New York,
Plaintiff in Error,

*v.*

Mrs. R. A. Patterson, Defendant in Error.

(*Jackson,* April Term, 1959.)

Opinion filed May 1, 1959.

WALDROP & HALL, HEWITT TOMLIN, JR., Jackson, for plaintiff in error.

G. L. MORRISON, A. J. WOODALL, Jackson, for defendant in error.

Mr. Justice Swepston delivered the opinion of the Court.

This is a proceeding under the Tennessee Workmen's Compensation Act, T.C.A. sec. 50-901 et seq. By reason of an injury to the upper section of her left leg, the employee Mrs. Patterson was awarded a judgment for compensation for permanent partial disability to the extent of 65% of the body as a whole, as provided under T.C.A. sec. 50-1007, subsec. (c).

Both the employee and the insurance carrier have appealed. The insurance carrier insists that she is entitled only to compensation in the amount of 65% of the average weekly wage during 175 weeks for the loss of a leg, as provided under subsec. (c) of the above section under the title of Permanent Partial Disability.

The employee insists under her first assignment of error that the court should have awarded her temporary total disability from November 30, 1956, the date the employer ceased paying any compensation, up until the date of trial which was December 9, 1957. Under her second assignment of error she insists that the court should have awarded 100% total and permanent disability.

We shall dispose of the two assignments of error in behalf of the employee Mrs. Patterson first. The only claim made in the petition for compensation was for permanent and total disability. There was no mention of *temporary* total disability. The employer paid compensation from the date of the accident, August 28, 1956, to November 30, 1956. Since there was no pleading to sup-

port any additional compensation for this temporary total disability from then up to the date of trial, the court was correct in confining its award to what was claimed in the petition. *Phillips v. Diamond Coal Mining Co.,* 175 Tenn. 191, 133 S.W.2d 476.

■ As to the second assignment of the employee, we have examined this record very carefully and we are certain that there is no evidence to sustain a claim of 100% total disability. Both assignments of the employee are, therefore, overruled.

The real determinative question is whether or not there is any material evidence to support the finding of the court that she was entitled to an award for permanent partial disability apportioned to the body as a whole. That requires a brief recitation of the facts.

At the time of the trial in December, 1957, the employee Mrs. Patterson was 43 years old, married and living with her husband for 16 years and has one son 9 years old. Her formal education ceased after 3 months in the 12th grade. Prior to her going to work for the Tigrett Industries, her employer where she was injured, she had worked for about 16 years as a waitress at 2 or more restaurants in Jackson, Tennessee. This, of course, required her to be standing a large part of the time. Likewise, at the Tigrett Industries her work required her to be on her feet practically all of the hours of employment. At the time of the accident she was about to stack some boxes when she tripped and fell against a pipe that was sticking up about 7 inches from the floor and the same penetrated her left leg near the hip and caused a very serious wound. The proof shows that this caused a previously existing but dormant ulcer to become active so

that she suffered a great deal from nausea and was unable to keep food on her stomach so that along with her pain and suffering she lost some 30 or more pounds in weight.

By an amendment to her petition she claimed that this reactivation of the ulcer was a substantial part of her claim for total disability, but the proof is absolutely uncontradicted that the ulcer was healed. By another amendment she made the same claim with reference to alleged phlebitis. However, the proof is uncontradicted that, although one doctor suspected phlebitis at one stage, the suspicion was not borne out, so that phlebitis is out of the picture.

As a result of the injury to her leg, her nervous disposition was aggravated and there is a weakness in the muscles of her left leg that disables her from standing too long at a time. In fact, up to the date of trial, she testified that she had fallen 50 or 60 times when she stood for more than 30 or 40 minutes at a time. The leg causes her considerable pain and nervousness which interferes with her ability to sleep.

She is not trained to do any other type of work than such as she has been doing, which requires that she stand the greater part of the working hours and the evidence is all to the effect that for the present at least she is not capable of doing the same kind of work that she was doing when injured.

There was considerable difference of opinion among the doctors who testified. Dr. W. S. Ogle, a neuro-surgeon of Memphis acting for the employer, examined Mrs. Patterson on April 15, 1957. His conclusion was that she did not have any remaining nerve injury or disability to the nervous system but he stated that that

had no reference to the mental condition which would call for a psychiatrist and if she does have any disability, it is probably mental.

Dr. G. B. Hubbard, who was called by the employer but who had been Mrs. Patterson's surgeon over a period of several years, felt that she was suffering either from traumatic neurosis or is malingering. He says he does not know from which one she is suffering, but he has to accept her and her history as she tells it to him; he does not know whether she will ever be able to do work that will require her to be on her feet. At the present time he would not certify her as being able to work at her usual occupation. However, he felt that her leg would improve if she used it and would retrograde if she did not use it; he fixed her present disability at 15%. The testimony of Dr. Lamb B. Myhr called by the employer was to the same effect as that of Dr. Hubbard except he said that he placed the disability at 15% to the leg itself but none to the body as a whole, although she is more nervous that she was.

It is proper to interject at this point that no claim is made in the pleadings that Mrs. Patterson is suffering from traumatic neurosis, which is a mental condition.

■■ Mrs. Patterson was examined in August, 1957, by three doctors, each of whom testified that they gave her a complete examination; but the common sense of it is that they were cursory examinations and were based on subjective symptoms in a large measure. In behalf of the employer it is stated that this testimony is not admissible but we have to accept it in this case because, although certain objections were made at the time, the exceptions were not preserved and no assignments of error are

predicated thereon, so that the evidence is in the record for our consideration. The general rule as to trials by the court without a jury is that exceptions to the ruling of the trial judge must be preserved just as in any other case. 53 Am. Jur., 785, Sec. 1130; Supreme Court Rule 14, subsec. 4.

There is no assignment of error complaining of the action of the trial judge on this evidence.

As suggested, these three doctors had to base their opinions on what the patient stated to them with reference to the history of the case and her present feeling. Dr. Thomas K. Ballard's testimony was largely in response to hypothetical questions. He thought she was not physically fit for her type of employment. Dr. J. G. Anderson testified that she would never be able to hold a job when she has to stand, meaning, of course, for any appreciable length of time. Dr. F. M. Friedman testified as follows:

"I don't think Mrs. Patterson could carry out any gainful employment which required her to be active in any way. Mrs. Patterson has a very definite muscular weakness and pain in certain specific motions of her leg. This did not pertain to all motions of her leg as would be perhaps present in a malingerer, but she had pain and weakness in specific muscles of the leg which would pertain to the region of the injury. I think that ordinary activity would require the use of these muscles and I don't think she would be employable."

We have gone into the medical testimony not with the idea of weighing the same but for the purpose of showing what the trial judge had before him. He did

not have to accept the statement of any one or more of the witnesses but it was his duty to weigh the entire evidence and to evaluate the percentage of disability as his judgment dictated. *Crane Enamel Co. v. Jamison,* 188 Tenn. 211, 217 S.W.2d 945.

■ It further appeared that, although this lady has suffered severely and still experiences great discomfort and disability at the present time to do her accustomed work, still she does her cooking and part of her housework, is able to drive her automobile which has automatic transmission, has been answering the telephone at her husband's garage, etc. It is the insistence of the employer that the award should have been limited to Permanent Partial Disability under T.C.A. sec. 50-1007, subsec. (c) to 65% of the average weekly wage during 175 weeks, as provided by the next to the last paragraph under subsec. (c).

■ We think there was substantial evidence to bring the case within the line of cases like *Russell v. Virginia Bridge & Iron Co.,* 172 Tenn. 268, 279, 111 S.W.2d 1027, 1031, wherein the injured member is not actually lost but the injuries are greater than the loss of such member would have been. In those cases the award was estimated upon the loss of earning capacity. By the amendment of 1953, Chap. 111, Sec. 2, the last paragraph of said subsection (c) was deleted and the present provision was inserted whereby "the body as a whole" is given a specific value in weeks in the same manner that a value in weeks is given in the rest of the schedule to the various members of the body. Thus it becomes a part of the schedule. T.C.A. sec. 50-1007(c) last paragraph under permanent partial disability; *Hooper v. Young Sales*

*Corp.,* 199 Tenn. 629, 635, 288 S.W. 2d 703; *Bituminous Casualty Corp. v. Smith,* 200 Tenn. 13, 288 S.W.2d 913; *Franklin v. Travelers Insurance Co.,* D.C., 155 F.Supp. 746.

The judgment below is affirmed with costs.