James W. McKenzie

*v.*

Campbell and Dann Manufacturing Company et al.

354 S. W. 2d 440.

(*Nashville,* December Term, 1961.)

Opinion filed February 8, 1962.

476

THOMAS A. WISEMAN, JR., Tullahoma, for petitioner.

HENRY, MCCORD & FORRESTER, Tullahoma, for respondents.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Law and from the action of the Chancellor all parties have appealed.

The record discloses that on or about November 16, 1959 James W. McKenzie sustained an accidental injury to his ankle and leg which grew out of, and in the course

of, his employment while working in the plant of the defendant, Manufacturing Company. McKenzie was working on a packing bench when he stumbled and fell and as a result of such fall he received severe injuries to his ankle and leg and his entire nervous system according to his petition. Immediately after the happening of said accident he went to the offices of Drs. Galbraith and Snoddy in Tullahoma where he was examined and treated. Thereafter he was treated by several doctors and finally was hospitalized on Septemeber 18, 1960 for a period of eight days and underwent an operation for the severance of nerves feeding his leg and other surgical procedures to reinstate the circulation in his leg and ankle which had been cut off as a result of his accident and injury. The employer, acting through its insurance carrier, the defendant Travelers Insurance Company, made voluntary payments to the petitioner for temporary total disability from the date of the injury through June 22nd, 1960, at which time they were discontinued but they were resumed on September 19th, 1960, the date of the operation, and such payments were continued through January 1, 1961, at which time a final settlement based upon twenty-two (22%) percent permanent partial disability to the leg was offered petitioner and refused by him. McKenzie in his original petition seeks to recover compensation for permanent total disability or such degree of lesser disability to the body as a whole as the Court in its discretion may determine from the proof in the case.

The defendants filed an answer in which they admitted that the petitioner had sustained an accidental injury growing out of and in the course of his employment and that the payments for temporary total disability were

made as alleged in the petition, but denied that the petitioner is entitled to an award of permanent total disability but avers on the contrary that he is entitled to receive compensation based upon twenty (20%) percent permanent partial disability to his left leg. At the hearing the defendants amended their answer to admit liability to the extent of twenty-five (25%) percent to the body as a whole. The defendants expressly denied, however, that the entire nervous system was injured as a result of said accident.

A number of doctors treated the petitioner, and their testimony was received by the Court either orally or by deposition. The Chancellor stated that the testimony of Mrs. McKenzie and Hince Sain with reference to the extent of the disability of the petitioner did not aid the Court to any great extent and that the testimony of the petitioner as to his condition was largely reflected in the medical testimony. The Court stated that the determination of the real question depends, as in many such cases, *almost* wholly upon the testimony of the doctors who are witnesses in the cause. (Emphasis supplied.) This statement did not mean that the Court rejected the testimony of the lay witnesses, including the petitioner, about the extent of his disability but it only indicated that the Chancellor placed a greater reliance upon and gave more weight to the testimony of the doctors in making his final decision than he did to the lay witnesses.

The rule in this State is that a lay witness may testify to his own physical condition or that of another person provided that the witness first states the detailed facts and then gives his opinion or conclusion. *Norton v. Moore,* 40 Tenn. 480; *Stephens v. Clayton,* 22 Tenn.App.

449, 124 S.W.2d 33; *Hamlin & Allman Iron Works v. Jones,* 200 Tenn. 242, 292 S.W.2d 27.

In the case of *Hamlin & Allman Iron Works v. Jones,* supra, it was stated—''the court will evaluate the testimony of a lay witness with reference to whether such witness has stated any material facts that justify the witness' conclusion to which he testifies''. The record shows that the Court did give consideration to the testimony of lay witnesses in this case, but concluded that such testimony was not of great benefit to him in deciding the issues involved. We think the Court was correct.

As set out in the brief of petitioner the testimony of the several doctors may be summarized as follows:

(1). Dr. Arnold Haber testified by deposition on May 12, 1961 that the petitioner suffered a permanent partial disability of twenty (20%) to twenty-five (25%) percent to the left lower extremity. On re-examination on June 3rd, 1961 Dr. Haber raised his estimate of permanent partial disability to twenty-five (25%) percent of the body as a whole.

(2). Dr. James Kirtley estimated the permanent partial disability of the petitioner as of December 16th, 1961 as twenty (20%) to twenty-five (25%) percent of the body as a whole.

(3). Dr. Howard Farrar estimated the permanent partial disability of the petitioner to be fifty (50%) to sixty (60%) percent of the body as a whole.

(4). Dr. Henry Brackin, Sr., a psychiatrist, estimated the disability of petitioner to be one hundred (100%) percent with the possibility of improvement to seventy-five (75%) percent of the body as a whole.

(5). Dr. Jack T. Farrar was not asked for a percentage figure, but testified that petitioner was unable to perform any job requiring manual labor or physical exertion.

Based upon all the testimony in the case the Chancellor held that the petitioner sustained an injury or injuries growing out of and in the course of his employment resulting in a permanent disability of fifty (50%) percent to the body as a whole.

In the case of *Anderson v. Volz Const. Co. et al.*, 183 Tenn. 169, 191 S.W.2d 436, the Court said:

"On appeal under Workmen's Compensation Act, Supreme Court does not reweigh evidence, but searches record only so far as necessary to determine whether there is material evidence to support finding of trial judge, who finally determines weight of evidence and witnesses' credibility."

No one could find fault with the statement that the record in this case reveals material evidence to support the finding of the Trial Judge. Therefore, we affirm his action in determining that the petitioner has suffered a permanent partial disability of fifty (50%) percent to his body as a whole.

In the case of *Claude Henninger Company v. Bentley*, 205 Tenn. 241, 326 S.W.2d 446, the Court held:

"If an employee receives an injury that is enumerated in the statute (that is an injury to a member of his body compensation for which is specifically scheduled) and this injury affects his body as a whole, a recovery may be had for either total permanent disability or permanent partial disability."

■ The Chancellor found that the petitioner had suffered a fifty (50%) percent permanent partial disability to the body as a whole. There was proof in the record that the petitioner was earning as much or more at the time of the hearing of this cause as he had been earning at the date of his injury. The question, however, is not what the petitioner happened to have been earning at the time of the trial of this cause, but what he is able to earn in his disabled condition on the open labor market. This reasoning was adopted by the Court in *Greeneville Cabinet Company v. Ramsey,* 195 Tenn. 409, 260 S.W.2d 157, and which we believe to be sound in principle and which we reaffirm.

■ The defendants contend that the allegation in the original petition to the effect that the accident had severely injured his angle, leg and his *entire nervous system* was not a sufficient averment to permit testimony that the petitioner was suffering from traumatic neurosis.

Dr. Bracken testified that his practice is in the general field of psychiatry. In his long experience in the medical practice he has specialized in diagnosis and treatment of all kinds of nervous and mental diseases. He states that the petitioner is suffering from a post-traumatic neurosis which is a nervous condition resulting from an accident. In examining the testimony of Dr. Brackin we are fully convinced that a diagnosis of post-traumatic neurosis is an injury to the nervous system.

The American Illustrated Medical Dictionary, Eleventh Edition, revised and enlarged, defines neurosis as ''a nervous disease: more especially a functional disorder of the nervous system; a disorder of the nervous system not dependent on any discoverable lesion.''

"The component parts of the nervous system include the brain and spinal cord, the ganglia of the central nervous system, the peripheral nerves and the sympathetic nervous system." 2 Gray, Attorneys' Textbook of Medicine, Sec. 107.03, p. 1187.

Again in Webster's Third New International Dictionary Unabridged neurosis is defined as "a functional disorder of the central nervous system".

■ Therefore, a traumatic or post-traumatic neurosis is one that is occasioned by or results from an accident to the nervous system. The general averment that the petitioner had suffered an injury to his entire nervous system, although general in terms, is sufficient to put the defendants upon notice of the claim of the petitioner. In their answer they say "defendants deny that petitioner's leg and entire nervous system were injured", which shows beyond question they had notice of the claim of the petitioner.

■ One medical witness in describing the injury sustained by the petitioner used the words "unstable nervous system". The defendants made no objection to the medical testimony relating to this averment of the petitioner when offered in proof. They did not assign the admission of such testimony as error in their petition to rehear.

The Trial Judge "will not be put in error for matters not called to his attention, and which he was given no opportunity to correct". *Mullins v. Tennessee Stave & Lumber Company,* 155 Tenn. 132, 290 S.W. 975. *Adams v. Patterson,* 201 Tenn. 655, 301 S.W.2d 362.

We are of the opinion that the injuries sustained by the petitioner are embraced within the general averments

in the petition. The case of *Fidelity & Casualty Company of New York v. Patterson,* 204 Tenn. 673, 325 S.W.2d 258, is not in point for the reason that the petition for Workmen's Compensation in that case did not contain an averment that petitioner had suffered temporary total disability. The only claim in the petition was for permanent and total disability. The Court held that since there was no pleading to support any additional compensation for temporary total disability up to the time of the trial the Court was correct in confining its award to what was claimed in the petition. In the instant case the complaint is that the pleading is not specific. For the reasons indicated we think there is no merit in this assignment.

Traumatic or post-traumatic neurosis has been recognized as an "injury" within the meaning of the Act in the case of *Buck & Simmons Auto & Electric Supply Co. et al. v. Kesterson,* 194 Tenn. 115, 250 S.W.2d 39, in the following language:

"Where employee suffered cut neck when struck by truck, traumatic or posttraumatic neurosis resulting from the cut and causing almost unbearable pain resulting in total and permanent disability was an 'injury' within Workmen's Compensation Law."

"Word 'injury' in Workmen's Compensation Law includes consequences from objective physical break or wound such as mental ailments or nervous conditions."

The record discloses that the defendant made voluntary payments for temporary disability through June 22, 1960 at which time they were stopped. The payments were resumed on September 19, 1960 when the petitioner was

hospitalizd and operated on and such payments were continued through January 1, 1961, at which time the defendant, Insurance Company, offered the petitioner a final settlement as aforesaid.

Petitioner complains that the Court erred in failing to award weekly payments for temporary total disability for the period from June 22, 1960 through September 19, 1960. He testified that he was disabled during this period of time and he is sustained in this regard by Dr. Howard Farrar and Dr. Jack Farrar. There is no material and relevant testimony to the contrary, and we think that weekly benefits should have been decreed to him for this period of time.

The Chancellor decreed that payments of weekly benefits for the final award should commence upon the entry of his decree; that is, on the 17th day of June 1961; and continue for a period of two hundred (200) weeks. The petitioner assigns this as error and says that the payments should commence and be dated back to the date of his injury; that is, November 16, 1959. To dispose of this controversy we refer to the opinion in *Charles R. Redmond v. McMinn County et al.*, 209 Tenn. 463, 354 S.W.2d 435, prepared by another member of this Court and to be released simultaneously with this opinion.

"Our Workmen's Compensation statute (T.C.A. sec. 50-1007(a), (b), (c), (d), like the statutes of a number of other states, classifies compensable disabilities into these four distinct classes: '(a) temporary total disability,' '(b) temporary partial disability,' '(c) permanent partial disability,' and '(d) permanent total dis-

ability.' See Kelly, The Demarkation of Disabilities Under Tennessee Law, 20 Tenn.L.Rev. 333-360.

"Each of these four kinds of disability is separate and distinct and is separately compensated for by different methods provided by the several sub-sections of sec. 50-1007; and each of such provisions is independent and unrelated. *Wilkinson v. Johnson City Shale Brick Corp.,* 156 Tenn. 373, 382, 299 S.W. 1056, 2 S.W.2d 89; *Clayton Paving Co. v. Appleton,* 163 Tenn. 27, 39 S.W.2d 1037; *Liberty Mut. Ins. Co. v. Maxwell,* 164 Tenn. 1, 46 S.W.2d 67; *Griffith v. Goforth,* 184 Tenn. 56, 66, 195 S.W.2d 33.

■ "It should be noted there is a difference between the legal, and the medical, concepts of disability under workmen's compensation statutes; the one means inability to work or earn wages; and the other, inability in a physical or clinical sense (2 Larson's Workmen's Compensation Law (1952 ed.) secs. 57, 57.10); and the distinctions between these four different kinds of disability depends upon a construction of such statutes.

■ ■ "Under statutes like ours, 'temporary total disability' refers to the injured employee's condition while disabled to work by his injury and until he recovers as far as the nature of his injury permits; and it is separate and distinct from any of the other four kinds of disability, *Jackson v. Bethlehem-Fairfield Shipyard, Inc.,* 185 Md. 335, 44 A.2d 811; *Vishney v. Empire Steel & Iron Co.,* 87 N.J.L. 481, 95 A. 143.

" ' "Temporary disability is a condition that exists until an injured workman is as far restored as the permanent character of the injuries will permit, and the length of the period of the temporary disability can

only be determined when that period ends." ' Citing cases. 11 Schneider, Workmen's Compensation, sec. 2308 pp. 435, 436.

"Again:

" 'The period of temporary total disability is the healing period or the time during which the workman is wholly disabled and unable by reason of his injury to work. It is, therefore, a *separate and unitary period of compensation,* and as such *is distinguished from a permanent partial* disability' (citing cases) (italics ours). Schneider, pp. 433, 434.

* * * * * *

"Under our statute, compensations may be allowed an employee both for '(a) temporary total disability' and '(c) permanent partial disability' as a result of the same injury; and one is not to be deducted from or credited on the other T.C.A. sec. 50-1007 (a) (c). *Bituminous Cas. Corp. v. Smith,* 200 Tenn. 13, 288 S.W.2d 913. See *Willoughby v. Warstler & Egly Bakery, Inc.,* 201 Tenn. 277, 298 S.W.2d 727. (See Ch. 172, Acts 1959)."

 It is clear, therefore, that under the statute the petitioner in this case is entitled to the weekly benefits provided by the Act for his temporary total disability from the date of his injury up to and including January 1, 1961 at or about which time the degree of his permanent partial disability could be reasonably ascertained.

In the case of *Hartley v. Liberty Mutual Insurance Cmpany,* 197 Tenn. 504, 276 S.W.2d 1, the Court was dealing with a case in which the employee lost an arm

which is one of the scheduled injuries for which the employee is entitled to benefits for a definite and certain number of weeks. He was entitled to these benefits upon the happening of the event and, of course, he was also entitled to receive payment for any temporary total disability suffered as a result of the loss of his arm.

In the case before us there was no way to determine the extent or the degree of permanent disability to the body as a whole until he was as far restored to his former condition as nature and medical science could restore him. It was only at that time that the degree of his permanent partial disability could be determined.

In the case of *Central Franklin Process Co. v. Gann,* 175 Tenn. 267, 268, 133 S.W.2d 503, 504, the Court held:

"Where an arthritic condition in employee's back resulting from a fall became progressively worse until it permanently incapacitated her, court properly determined that payment of compensation for total permanent disability should commence on a date subsequent to date of injury."

We are satisfied that the weekly benefits due the petitioner should commence on January 1, 1961 and continue for a period of two hundred (200) weeks thereafter at the rate decreed by the Chancellor.

With deference to the very able memorandum opinion prepared by the Chancellor, his decree will be modified so as to allow a recovery by the petitioner for weekly benefits from June 22, 1960 through September 19, 1960 and to the extent that the benefits decreed for permanent partial disability will commence on January 1, 1961, and as thus modified the Chancellor's decree will be

affirmed. The costs of the cause on this appeal are adjudged equally between petitioner and defendants. The cause is remanded to the Chancery Court for the entry of all necessary orders and decrees consistent with this opinion.