**FILED**
**Jun 21, 2024**
**02:15 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | | |
|---|---|---|
| **JOHN OLDHAM,** | ) | **Docket No. 2022-03-0420** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FREEMAN WEBB COMPANY** | ) | |
| **REALTORS d/b/a SUNNY BROOK,** | ) | **State File No. 66575-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY,** | ) | **Judge Pamela B. Johnson** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

John Oldham broke his leg at work, and Freeman Webb accepted the claim as compensable. The parties settled Mr. Oldham's original permanent partial disability award with lifetime future medical benefits.

At the expiration of his initial compensation period, Mr. Oldham filed a petition for permanent total disability or alternatively increased benefits, and discretionary costs.[1] Freeman Webb denied that Mr. Oldham is entitled to any further benefits. It first argued that his permanent total disability claim was barred by the settlement, and second that any other benefits should be denied because his current condition was not a direct and natural consequence of his original work injury.

For the reasons below, the Court holds that Mr. Oldham is entitled to permanent total disability benefits and discretionary costs.

---

[1] Mr. Oldham alternatively asked for extraordinary relief, but he withdrew the request at the Compensation Hearing.

1

## History of Claim

Mr. Oldham, age 59, worked as a maintenance technician for Freeman Webb. On October 6, 2020, he fell, breaking his right femur. Dr. Scott Smith, the panel-selected physician, repaired the comminuted fracture using a rod and screws. Due to ongoing pain and a nonunion, Dr. Smith performed a second surgery in June 2021, using a bone graft and hardware. Dr. Smith placed Mr. Oldham at maximum medical improvement on November 4 and assigned an 8% permanent impairment. He also placed permanent restrictions of no climbing ladders, lifting no more than 20 pounds occasionally, and standing or walking no more than four hours per day. Dr. Smith completed an application for Mr. Oldham to receive a disabled driver vehicle tag and wrote that he needed crutches permanently.

Freeman Webb terminated Mr. Oldham in April 2021 because he missed work for more than 26 weeks, and company policy required termination even if the absence is due to a work injury. Mr. Oldham has not worked since.

Mr. Oldham saw Dr. William Kennedy for an independent medical examination in November 2021. Dr. Kennedy confirmed Dr. Smith's rating and found his treatment of Mr. Oldham appropriate. But he recommended stricter permanent restrictions:

> I recommend that his activities of daily living and any employment should not require repeated bending that may compromise his balance – bending from the waist that may compromise his balance. He should not be required to carry out any squatting or kneeling. He should not attempt to climb ladders, work at heights, work on his hands and knees or crawl. He should not attempt to work over rough or irregular surfaces or on sloping surfaces. He must have access to a handrail any time he ascends or descends more than a total of one flight of stairs per day. He should be able to sit at least 75 percent of the time, with opportunities to change positions at least every 30 minutes. Lifting and carrying should not exceed 10 pounds occasionally or 5 pounds frequently. Of course, assuming that such lifting and carrying does not interfere with his use of a gait aid.

Mr. Oldham supplemented his medical proof with a vocational disability evaluation by Michael Galloway. Mr. Galloway interviewed Mr. Oldham, administered academic testing, and reviewed various records. Mr. Oldham's work history included work as a maintenance technician, production line assembler, garage door installer, and construction worker. His work required light to heavy physical demands and ranged from unskilled to skilled. He has a high school diploma, attended limited technical courses in computer training without receiving a degree or certification, and rebuilds computers as a hobby to resell. Mr. Oldham previously had HVAC/EPA certifications.

Mr. Galloway noted that Mr. Oldham helped his wife with household chores, such as vacuuming, laundry, loading the dishwasher, and cooking. He was able to stand for 15-20 minutes then needed to sit. He said he can no longer mow his yard or service his vehicles, and is no longer able to fish, camp, or ride bikes as he did before the injury.

In a March 2022 report, Mr. Galloway determined Mr. Oldham was 91% vocationally disabled based on the local labor market, his age and education, and lack of transferable job skills when considering Dr. Smith's restrictions. If he considered Dr. Kennedy's restrictions, Mr. Galloway found Mr. Oldham 100% vocationally disabled. In July 2022, Mr. Galloway concluded Mr. Oldham was 100% vocationally disabled when he saw Dr. Smith's notation that he use crutches permanently on the disabled driver vehicle tag application.

On April 28, 2022, the Court approved an 8% permanent partial disability award (original award), or $18,874.17, with lifetime future medical treatment. The settlement agreement stated that Mr. Oldham's initial compensation period would expire on July 14, 2022. The agreement included language that Mr. Oldham might then file a Petition for Benefit Determination to determine whether he was "entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) or extraordinary relief under Tennessee Code Annotated section 50-6-242(a)." The agreement also included this language:

> This document represents the entire agreement and the parties' complete understanding with no representations or promises other than those in this agreement. All prior negotiations, representations and agreements are merged into this agreement . . . The parties signed this agreement, which is binding when the judge approves the settlement.

In November 2022, Mr. Oldham filed a petition seeking permanent total disability benefits, or alternatively increased benefits or extraordinary relief. Freeman Webb denied his entitlement to additional benefits on several grounds. With regard to his claim for permanent total disability, Freeman Webb argued that the Workers' Compensation Law and the terms of the settlement agreement do not allow Mr. Oldham to seek permanent total disability after resolving his original award. As to his claim for a resulting award or increased benefits, Freeman Webb argued Mr. Oldham was not entitled to them because the need for the second surgery due to a nonunion and resulting permanent restrictions was caused by Mr. Oldham's continued smoking and were not a direct and natural consequence of his original work injury.

On the issue of the nonunion, the parties introduced the deposition testimony of Drs. Kennedy and Smith.

Dr. Kennedy testified that Mr. Oldham's fracture was unstable and challenging to repair. Dr. Kennedy said that, given the nature of the fracture, it had only a 50% chance of

healing from the beginning and was the most likely cause of the nonunion. He said Mr. Oldham's smoking was only a minor contributing factor to the nonunion.

Dr. Smith described Mr. Oldham's fracture as long, in three pieces, and involving a gap between the fracture, which caused instability and complicated its healing. Dr. Smith further described the gap as a significant factor in causing the nonunion. Dr. Smith also wrote that the muscle and circulation damage from the injury were unknown. He testified that while fractures like Mr. Oldham's have an 85-95% chance of healing, the nonunion "obviously was a natural consequence that occurred . . . [as] not every femur fracture heals." Dr. Smith agreed that Mr. Oldham's smoking was a contributing factor, but multiple factors led to the nonunion. Dr. Smith stated that Mr. Oldham's nonunion was a "rare, expected consequence. . . some [fractures] don't heal and you have no explanation why." Ultimately, Dr. Smith concluded that Mr. Oldham's fracture successfully healed after the second surgery.

Both physicians were also asked to review video surveillance obtained by Freeman Webb of Mr. Oldham over three days in February 2023. Dr. Kennedy observed Mr. Oldham limping, protecting his right leg, and taking weight off of it. Dr. Kennedy stated that the video supported Mr. Oldham's expected abilities. Dr. Smith agreed that the video showed Mr. Oldham limping and "[m]ostly it showed that he was having a little bit of pain and his quadriceps is weak because he's keeping his knee extended. He was not – he was concerned about his knee buckling." Similarly, Mr. Galloway watched the video and testified that Mr. Oldham did not appear to do anything outside of his restrictions. Mr. Oldham is not seen using crutches in the video; he initially is seen at a storage facility without any walking aid and is later using a cane to enter and exit a store.

At the hearing, Mr. Oldham testified to his pre- and post-injury activities and limitations. Consistent with what he told Mr. Galloway, he previously enjoyed camping and fishing, and he was able to do his own yardwork and home and car repairs. After the injury, he cannot do those activities. He admitted that he has gone camping since the injury, but family members had to set up his camper.

Mr. Oldham said he sits 75% of the day with his leg elevated due to swelling but he has to get up every 20-30 minutes to walk because he cannot sit too long. He also said he is unable to stand for long periods or walk long distances. He occasionally uses crutches when walking long distances and frequently uses a cane unless he is able to brace himself on nearby objects.

He said he has not worked since the injury, explaining that his restrictions were "too much" to allow him to work. He did agree that he has rebuilt computers to resell.

Freeman Webb moved for partial summary judgment seeking dismissal of Mr. Oldham's request for permanent total disability as a matter of law. The Court must first address that motion.

Freeman Webb first argued that Mr. Oldham settled his original award of permanent *partial* disability benefits in April 2022, although Dr. Kennedy and Mr. Galloway had already evaluated him for a permanent *total* disability claim. Thus, the settlement agreement resolved all issues related to his claim except those specifically listed in the agreement – increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) (2023) and extraordinary relief under section 50-6-242(a)(2). Freeman Webb went on to say that both sections 207(3)(B) and 242(a) allow an employee to seek additional permanent partial disability at the expiration of the initial compensation period, but permanent total disability benefits under section 50-6-207(4) are not benefits that Mr. Oldham might seek at a future date.

Freeman Webb additionally argued that because Mr. Oldham entered into a binding settlement agreement for permanent partial disability benefits, which was approved, he is not eligible for permanent total disability benefits under section 50-6-207(4).

Mr. Oldham countered that Freeman Webb waived its right to oppose his claim for permanent total disability benefit when it did not plead its defense on the Dispute Certification Notices as required by Tennessee Compilation Rules and Regulations 0800-0-21-.21(3) (2023) and Tennessee Rules of Civil Procedure 8.03 (2023).

He further contended that section 50-6-207 includes as benefits available to injured employees both permanent partial disability benefits under subsection (3) and permanent total disability benefits under subsection (4).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. To prevail, Freeman Webb must do one of two things: (1) submit affirmative evidence that negates an essential element of Mr. Oldham's claim, or (2) demonstrate that his evidence is insufficient to establish entitlement to benefits. Tenn. Code Ann. § 20-16-101; *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). If Freeman Webb meets its burden, Mr. Oldham must "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in [his] favor." *Id*. at 265.

For purposes of summary judgment, the parties did not dispute any material facts; the disputes are legal in nature and require an analysis of sections 50-6-207(3) and (4) and

section 50-6-242(a)(2).

Section 50-6-207 provides the types of disability benefits available under the Workers' Compensation Law. The section begins, "The following is the schedule of compensation to be allowed employees under this chapter[.]"[2] Subdivisions (1) and (2) address temporary total and temporary partial disability benefits. Subdivisions (3) and (4) outline permanent partial and permanent total disability benefits.

Specifically, subdivision (3) reads, "(A) In case of disability *partial in character but adjudged to be permanent*,"[3] the employee is entitled to his weekly compensation rate "for the period of compensation, which shall be determined by multiplying the employee's impairment rating by four hundred fifty (450) weeks." (Emphasis added). "The employee shall receive these benefits, in addition to the benefits provided in subdivisions (1) and (2) . . . whether the employee has returned to work or not[.]" This is the employee's "original award."

In addition to the benefits available under subsection (A), subdivision (B) provides that an employee is entitled to increased benefits if the employee has not returned to work, earning the same or greater wages, at the time his period of compensation provided by subdivision (3)(A) ends, or one hundred eighty (180) days after the employee reaches maximum medical improvement, whichever is later.

Alternatively, under section 50-6-242(a)(2), "in extraordinary cases where the employee is eligible for increased benefits under § 50-6-207(3)(B)," the employee may be entitled to his weekly compensation rate "for a period not to exceed the two hundred seventy-five (275) weeks inclusive of the benefits provided to the employee under § 50-6-207(3)(A)."

However, an employee may be entitled to permanent total disability benefits under section 50-6-207(4)(B) "[w]hen an injury . . . totally incapacitates the employee from working at an occupation that brings the employee an income[.]" Those benefits are paid "during the period of the permanent total disability until the employee is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act (42 U.S.C. § 401 et seq.)[.]"[4]

A plain reading of the statute requires the expiration of the initial compensation period *before* the Court may award increased benefits under section 50-6-207(3)(B) or extraordinary relief under section 50-6-242. The statute is silent regarding any time component before an employee may seek permanent total disability benefits.

---

[2] Before enactment of the Reform Act of 2013, section 50-6-207 contained the same language under prior law.

[3] The introduction to section 50-6-207(3)(A) contained the same language under prior law.

[4] The same language is contained in section 50-6-207(4)(A) and (B) under prior law.

6

The parties cited no authority, and the Court also has found none, where an employee has been awarded permanent total disability after an award or settlement of the original award. Therefore, this is an issue of first impression under the Workers' Compensation Law.

Turning to prior law for guidance, two cases support an award of permanent total disability after reconsideration.

In *Caruthers v. Aerostructures Corporation*, No. M2005-01370-WC-R3-CV, 2006 Tenn. LEXIS 1134 (Tenn. Workers' Comp. Panel July 24, 2006), the employee injured her neck while working on an airplane assembly line. The parties reached a settlement of 27.5% permanent partial disability, which the trial court approved, and she returned to work for the employer. However, the employee was unable to continue working due to pain, resigned, and then filed for reconsideration of her award. The trial court found that she was permanently and totally disabled.

On appeal, the employer argued that the statute prevented the trial court from awarding permanent total disability in a reconsideration hearing. The Panel disagreed and affirmed the award, which was adopted by the Tennessee Supreme Court. *Id.* at *6-8; *Caruthers v. Aerostructures Corp.*, 2006 Tenn. LEXIS 1135 (Tenn. 2006) (per curiam).

Similarly, in *Princinsky v. Premier Manufacturing Support Services*, No. M2009-00207-WC-R3-WC, 2010 Tenn. LEXIS 877 (Tenn. Workers' Comp. Panel Sept. 23, 2010), the employee settled a claim for permanent partial disability and later filed a petition for reconsideration alleging that she was permanently and totally disabled. The trial court agreed and awarded permanent total disability benefits. The Panel affirmed, and the Supreme Court adopted this opinion as well. *Id.* at *20-21; *Princinsky v. Premier Mfg. Support Servs.,* 2010 Tenn. LEXIS 876 (Tenn. 2010) (per curiam).

Freeman Webb contended the terms of the settlement agreement and the statutes preclude Mr. Oldham from seeking permanent total disability after settling the original award. However, both the agreement and the statute are silent as to when an employee may seek permanent total disability benefits. The settlement agreement stated that Mr. Oldham might seek increased benefits and/or extraordinary relief at the expiration of the initial compensation period. While a claim for permanent total disability benefits was not expressly preserved in the settlement agreement, the claim was not expressly precluded, either.

Similarly, the subsections of 50-6-207(3) and 50-6-242 expressly identify the date that triggers a potential claim for increased benefits or extraordinary relief. However, no triggering date is provided in section 50-6-207(4), and no language prevents a claim for permanent total disability at the time claims for increased benefits and/or extraordinary

7

relief are made. Thus, the Court will not add a limitation that does not exist in the statute.

Finally, Tennessee law has long held that the Workers' Compensation Law classifies compensation into "four distinct classes: (a) temporary total disability, (b) temporary partial disability, (c) permanent partial disability, and (d) permanent total disability." *McKenzie v. Campbell & Dann Mfg. Co.*, 354 S.W.2d 440, 445 (Tenn. 1962). "Each of these four kinds of disability is separate and distinct and is separately compensated for by different methods provided by the several sub-sections of [the statute]; and *each of such provisions is independent and unrelated*." *Id.* (Emphasis added).

That said, refusing to consider whether Mr. Oldham is now permanently and totally disabled from his injury ignores a required independent consideration of whether he is totally incapacitated from working. That determination requires looking at "the employee's skills and training, education, age, local job opportunities, and his capacity to do work at the kinds of employment available in [the employee's] disabled condition." *Braden v. Mohawk Indus., Inc.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *21-22 (Mar. 21, 2022). The Court finds nothing to prevent that determination being made, and in fact finds that this consideration is required if Mr. Oldham is to receive compensation for the disability caused by his injury.

Having compared the pre- and post-reform statutory language and the pre-reform case law, the Court concludes that an employee's recovery of the original award by trial or settlement does not bar the employee from seeking permanent total disability at the same time the employee petitions for increased benefits and/or extraordinary relief at the expiration of the initial compensation period. For these reasons, the Court denies the motion.

### Findings of Fact and Conclusions of Law

Turning to the proof at the Compensation Hearing, Mr. Oldham must show by a preponderance of the evidence that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6).

*Extent of permanent disability*

Mr. Oldham suffered a complex fracture of his right femur at work for Freeman Webb. Dr. Smith, the panel-selected physician, performed two surgeries and assigned an 8% permanent impairment and permanent restrictions. The Court approved an 8% permanent partial disability award (original award), or $18,874.17, with lifetime future medical treatment.

Freeman Webb now contends that the necessity of the second surgery and permanent restrictions were not a direct and natural consequence of the original work injury but due to Mr. Oldham's continued smoking.

However, both Drs. Smith and Kennedy concluded that the nonunion and need for a second surgery were a direct and natural consequence of the original work injury. Dr. Kennedy testified that Mr. Oldham's fracture was unstable, had only a 50% chance of healing from the beginning, and was the most likely cause of the nonunion. Dr. Kennedy said Mr. Oldham's smoking was only a minor contributing factor to the nonunion. For his part, Dr. Smith described Mr. Oldham's fracture as long, in three pieces, and involving a gap between the fracture, which caused instability and complicated its healing. Dr. Smith further testified that the nonunion "obviously was a natural consequence that occurred[.]" Finally, Dr. Smith agreed that Mr. Oldham's smoking was a contributing factor but said that multiple factors led to the nonunion.

No medical proof supports Freeman Webb's position. As the Appeals Board has held, "[P]arties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. Int'l Paper Co.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Feb. 14, 2018). The evidence thus establishes that the nonunion and resulting restrictions were a direct and natural consequence of the original work injury. Therefore, the Court must consider to what extent, if any, Mr. Oldham is entitled to permanent disability benefits beyond those paid under the settlement agreement.

Mr. Oldham may be found permanently and totally disabled when the work injury "totally incapacitates [him] from working at an occupation that brings an income." Tenn. Code Ann. § 50-6-207(4)(B).

In assessing Mr. Oldham's permanent vocational disability, the Court can consider several factors, including his medical impairment, job skills, education, age, training, "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Braden,* 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *21. Mr. Oldham's own assessment of his overall physical condition, including the ability or inability to return to gainful employment, "is competent testimony that should be considered." *Id*. at *21-22. The extent of vocational disability is a question of fact to be determined from both lay testimony and medical evidence. *Id*. at *22.

At the time of the hearing, Mr. Oldham is 59 years old with a high school diploma. He has worked as a maintenance technician, production line assembler, garage door installer, and construction worker. His physical demands ranged from light to heavy, and his jobs were classified as unskilled to skilled. In the past, he had certifications in HVAC and EPA. He also attended limited technical courses regarding computers.

As a result of the work injury, Mr. Oldham suffered an 8% permanent impairment.

Freeman Webb terminated Mr. Oldham before he reached maximum medical improvement because its policies required termination once an employee's absences exceed 26 weeks, even if the absences are due to a work injury. Mr. Oldham has not worked since his injury.

Both Drs. Smith and Kennedy assigned permanent restrictions. Dr. Smith assigned restrictions of no climbing ladders, weight limit lifting of 20 pounds occasionally, and standing/walking limited to four hours per day. Dr. Smith later noted that Mr. Oldham permanently needs crutches. Dr. Kennedy assigned restrictions to avoid repeated bending, carrying or squatting, climbing ladders, working on his hands, kneeling or crawling, and working over rough, irregular, or sloping surfaces. Dr. Kennedy further stated that Mr. Oldham must have access to a handrail when using stairs and limited his use of stairs to one flight per day. Dr. Kennedy said that Mr. Oldham should be able to sit at least 75% of the time, with opportunities to change positions at least every 30 minutes. Dr. Kennedy limited Mr. Oldham's lifting and carrying to 10 pounds occasionally or 5 pounds frequently.

Mr. Galloway noted that Mr. Oldham helped his wife with household chores, vacuuming, laundry, loading the dishwasher, and cooking. He was able to stand for 15-20 minutes then needed to sit. He said he could no longer mow his yard or service his vehicles and is no longer able to fish, camp, or ride bikes as he did before the injury.

Mr. Oldham testified that he sits 75% of the day and gets up to walk around every 20-30 minutes. He also said he is unable to stand for long periods or walk long distances. He uses crutches occasionally when walking long distances and a cane frequently unless he can brace himself on nearby objects.

Mr. Galloway determined that Mr. Oldham is 91% vocationally disabled based on Dr. Smith's restrictions and 100% vocationally disabled based on Dr. Kennedy's. He later added that Mr. Oldham was 100% disabled based on Dr. Smith's July 2022 notation on the disabled driver vehicle tag application about his permanent need for crutches. Mr. Galloway's opinions are unrefuted.

The Court concludes the preponderance of the evidence shows Mr. Oldham is permanently and totally disabled from full-time work. The Court considered his medical impairment, permanent restrictions and need for a walking aid, as well as his age, education, lack of training in traditional sedentary jobs, and the lack of job opportunities in the local labor market available within his restrictions.

*Benefits, fees, and costs*

The Court holds Mr. Oldham is entitled to weekly benefits from July 14, 2022, the end of his initial compensation period, until he is eligible for full retirement benefits under the Social Security Act. Tenn. Code Ann. § 50-6-207(4)(A)(i).

Next, the Court considers whether Mr. Oldham's attorney is entitled to attorney's fees under section 50-6-226(a)(1). The Court may award attorney's fees not to exceed 20% of the first 450 weeks of an award of permanent total disability, provided the fees are paid by the employee.

The Court finds that this case required significant time and expertise on the part of both counsel. It also presents a novel legal issue. A fee of 20% is statutorily authorized and customary in cases brought before this Court. Therefore, under sections 50-6-207(4)(A)(ii)(a) and 50-6-207(4)(A)(iii), the Court commutes 20% of the permanent total disability benefits for Mr. Oldham's attorney's fee in the amount of $54,296.10. Freeman Webb's attorney's fees, as they exceed $10,000, are similarly approved.

Additionally, section 50-6-207(4)(A)(ii)(c) states:

> After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate pursuant to subdivision (4)(A)(i).

Mr. Oldham will be eligible for full Social Security retirement benefits on May 26, 2031, when he turns 67. The period of July 14, 2022, through May 26, 2031, is 462 weeks and five days, which at his compensation rate totals $279,150.90. Reducing that amount by the attorney fee of $54,296.10 yields an adjusted total benefit of $224,854.80, which divided by 463 weeks equals an adjusted weekly compensation rate of $485.65. Freeman Webb shall pay Mr. Oldham's permanent total disability benefits at this rate. It shall also pay accrued benefits for the period of July 14, 2022, through the entry of this order in a lump sum.

Finally, Mr. Oldham seeks payment of his discretionary costs under Tennessee Rules of Civil Procedure 54.04(2). Specifically, he requests reimbursement of these litigation expenses totaling $4,921.35:

- Court Reporter Costs for John Oldham and Tina McKeehan transcripts
- Expert Deposition Fee for Dr. William Kennedy
- Court Reporter Fee for Dr. Kennedy transcript
- Court Reporter Fee for Dr. Smith transcript
- Expert Trial Appearance Fee for Mr. Galloway.

Freeman Webb objects to the costs to the extent they were incurred pursuing permanent total disability benefits.

Section 50-6-239(c)(8) authorizes discretionary costs including reasonable fees for depositions of medical experts against the employer upon adjudication of the employee's claim as compensable. So does Tennessee Rules of Civil Procedure 54.04(2).

Here, the Court finds that Mr. Oldham is entitled to discretionary costs under rule 54.04(2) and section 50-6-239 for his court reporter's fees for the deposition transcripts of the fact and expert witnesses and the testimony fees of his vocational expert. Those expenses were incurred in his pursuit of permanent disability benefits, including the permanent total benefits awarded. Freeman Webb shall reimburse Mr. Oldham's discretionary costs in the amount of $4,921.35.

**IT IS, THEREFORE, ORDERED** as follows:

1. Freeman Webb shall continue to provide medical care for Mr. Oldham's injuries as required by Tennessee Code Annotated section 50-6-204. Dr. Smith remains the authorized physician.

2. Freeman Webb shall pay Mr. Oldham a lump sum of 100 weeks of benefits and six days, totaling $48,565.00, in satisfaction of the benefits accruing between July 14, 2022, and the date of entry of this order.

3. Freeman Webb shall pay ongoing permanent total disability benefits weekly or bi-weekly until Mr. Oldham is eligible for full Old Age Social Security retirement benefits, and his permanent total disability award is paid in full.

4. Mr. Oldham's counsel shall be paid a 20% attorney fee, or $54,296.10, in a lump sum.

5. Freeman Webb shall pay Mr. Oldham's discretionary costs of $4,921.35.

6. Freeman Webb shall pay the $150.00 filing fee within five business days of entry of this order, for which execution may issue if necessary.

7. Freeman Webb shall file a Statistical Data Form (SD-2) within ten business days of this order becoming final.

8. Unless appealed, this order becomes final in 30 days.

**ENTERED June 21, 2024.**

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

12

**APPENDIX**

Exhibits:
1. Dr. Kennedy deposition transcript with attachments
2. Dr. Smith deposition transcript with attachments
3. Mr. Galloway vocational report
4. Ms. McKeehan deposition transcript
5. Video footage
6. Indexed Medical Records
7. Original settlement documents
8. Mr. Galloway curriculum vitae

## CERTIFICATE OF SERVICE

I certify that a copy of the order was sent as shown on June 21, 2024.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| Andrew Roberto, Employee's Attorney | | X | aroberto@brownandroberto.com |
| A. Allen Grant, Benjamin Norris, Employer's Attorneys | | X | agrant@eraclides.com bnorris@eraclides.com |

_Penny Shrum_
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

13



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on _____     ☐ Other Order filed on _____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s) (Requesting Party):** _____   ☐ Employer ☐ Employee

Address: _____   Phone: _____

Email: _____

Attorney's Name: _____   BPR#: _____

Attorney's Email: _____   Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation $ _____ per month     Child Support     $ _____ per month

Car     $_____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____